# MacARTHUR BROTHERS COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 97.   Argued January 20, 1922.—Decided February 27, 1922.

Claimant contracted with the Government to construct a portion of a canal, both parties assuming that part of the work could be done " in the dry " and the specifications so providing; but, owing to leakage through an adjacent pier constructed by a different contractor, all the work had to be done " in the wet " at increased cost.   The conditions were as open to claimant as to the Government; claimant was expected to and did visit the site and inform itself before making its bid; and its contract provided that the quantities in the specifications were approximate only, that no claim should be made against the United States on account of any excess or deficiency, absolute or relative, thereof, nor any allowance be made for failure of the contractor to estimate the difficulties correctly, that the expense of coffer dams, pumping plant and pumping to unwater all areas to be worked " in the dry " should be an incident of the general work and no special payment be made therefor, and that the United States assumed no liability whatsoever for loss of property or time due to failure of any part of the coffer dams, dikes or pumping plant.   *Held,* that there was no misrepresentation by the United States that any part of the work could be done " in the dry " and that claimant could not recover.   P. 9.

55 Ct. Clms. 181, affirmed.

Appeal from a judgment of the Court of Claims dismissing appellant's second amended petition upon demurrer.

*Mr. William B. King,* with whom *Mr. George A. King, Mr. William E. Harvey* and *Mr. George R. Shields* were on the brief, for appellant.

*Mr. Assistant Attorney General Riter,* with whom *Mr. Solicitor General Beck* and *Mr. H. L. Underwood* were on the brief, for the United States.

MR. JUSTICE McKENNA delivered the opinion of the court.

This is an action to recover damages for a breach of contract growing out of an alleged misrepresentation.

The appellant essayed recovery upon a petition to which a demurrer was sustained; it then filed an amended petition which was subjected to a like disposition, and then a second amended petition. Demurrer by the Government being sustained to that, appellant declined to amend again, and judgment was entered dismissing the petition. From the ruling this appeal is prosecuted.

The last petition is, as the others were, a very voluminous paper. It is enough to say that it sets forth a cause of action based upon a contract entered into by appellant with the United States, September 23, 1910, for the construction of the west end of the new canal at Sault Ste. Marie, Michigan, which was authorized by the River and Harbor Act of March 2, 1907, c. 2509, 34 Stat. 1073, 1098. The petition details the specifications, but the misrepresentation is alleged to be that they and the contract represented that a portion of the work would be done in the " dry " and a portion in the " wet ", whereas it was impossible to do any of the work in the " dry ", and it was all done in the " wet " at a cost greatly exceeding what it would have been had it been done the other way.

For the purposes of permitting the work to be done in the dry, it was necessary to construct certain cofferdams and this was especially provided for by the specifications. One of the cofferdams was known as the West Cofferdam, and was to be built as a contract item and connected the rock spoil bank (extending along the north side of the work) with the old North West Pier. The latter pier was constructed by another contractor partly before and partly after the date the Company entered into its contract with the United States. The Company was a bidder

for the work the specifications of which were published and accessible. When the contract in suit was entered into, that prior contract was in progress but not completed, and was not completed until after the Company had begun work on its contract.

The Company, it alleges, made all reasonable inquiries and investigations upon the site of the contract between the date of advertisement and the date of submitting its bid, and, by its president and chief engineer, inspected the conditions. The work under the previous contract of March 23, 1908, was then in progress.

The Company estimated and believed, as it had a right to do, is its allegation, that the specifications of that contract had been and were being duly and properly performed. If they had been so performed, is the further allegation, the Company would have been able to perform, under its own contract in the dry, such portions of the work as were required by the contract to be done in the dry.

It was only during the progress of the work that the Company discovered that the previous contract had not been carried out and that the work was defective. In consequence, extraordinary and expensive means had to be resorted to for a continuance of the work, and the work was greatly delayed beyond the time that the Company would have had to take if the conditions had been as shown by the specifications of the previous contract and had the work been performed by the previous contractor according to the specifications.

This expense continued until July 3, 1913, and the description as dry work in the specifications was, by reason of the conditions existing at the site of the work, a misrepresentation of the character of the work to be done, and induced on the part of the Company a lower bid than would have been made if the conditions had been properly described.

Owing to the leakage coming through the old North West Pier, it was not practicable for excavation to be made in the dry. Notwithstanding, the engineer in charge compelled the work to be done as contracted for, and the Company sustained damages in the sum of $366,052.67 for which it prayed judgment.

It is contended that the circumstances detailed amount to a representation by the United States that the work could be done in the dry, but that it was impossible to so perform it and that, therefore, the resulting expense should be discharged by the Government and that the Court of Claims erred in dismissing the petition.

To these assertions the Government opposes denials: (1) There was no misrepresentation. (2) If there were it is not available to the Company since it had investigated conditions before entering into the contract. (3) There was no misrepresentation as to the method by which the excavating could be done.

In considering the opposing contentions there must be taken into account certain provisions of the contract. It is therein provided that " it is understood and agreed that the quantities given in these specifications are approximate only, and that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative, in the same. No allowance will be made for the failure of a bidder or of the contractor to estimate correctly the difficulties attending the execution of the work."

" It is expected that each bidder will, prior to submitting his bid, visit the site of the work, examine the local conditions, inform himself as to the accessibility of the work, ascertain the character of the material to be excavated, consult the plats on file at the U. S. Engineer Office at Sault Ste. Marie, Mich., and obtain such available information as will assist him to make an intelligent bid, and the failure of a bidder to make such examina-

tion may be held to be sufficient reason for rejecting his bid."

" The contractor must construct and maintain all necessary cofferdams, furnish suitable and adequate pumping plant, and do all the pumping required to unwater all areas where work is to be done in the dry, and no special payment will be made therefor, the above work and expense being considered as incident to the general work covered by the contract prices of other items. . . ."

" The United States assumes no responsibility whatsoever for loss of life, property or contractors' time, due to the failure of any part of the cofferdams, dikes, or the pumping plant."

In supplement of these provisions of the contract, the following provision of the Company's proposal upon which the contract was awarded is pertinent: "We make this proposal with a full knowledge of the kind, quantity, and quality of the plant, work and materials required. . . ."

The repellent effect of those provisions and the contentions of the Company, would seem to need no comment, and the effect is reinforced by other considerations. The contract of the Company was made September 23, 1910, and at that time, according to the averments of the petition, work on the prior contract was in progress and had been in progress two years. And it is averred that the Company "made all reasonable inquiries and investigations upon the site of the contract between the date of advertisement, July 30, 1910, and the date of submitting its bid, August 29, 1910, by the President and Chief Engineer of the company personally inspecting the conditions. The work under the previous contract of March 23, 1908, was then in progress and uncompleted."

The Company was undoubtedly impelled to this investigation by the requirement of its contract to inform itself of the conditions and that no allowance would

be made for the failure to estimate correctly the difficulties attending the execution of the work. Its investigation may or may not have been adequate. It, however, took its chances on that. But in reality there was no representation by the Government nor is it alleged that the Government had knowledge of the conditions or means of knowledge superior to the knowledge of the Company. The latter acquired knowledge only by the aid of divers as its work progressed. Such being the situation, does not the case present one of misfortune rather than misrepresentation? It is true that the Government's proposal was for a certain part of the work to be done in the dry, but it made no representation of the conditions that existed enabling it to be so done or precluding it from being so done. The Company had no relation with the Government through the other contract. The Company assumed that it had been properly performed but the Government did nothing to create or direct the assumption or induce confidence in it.

Such being the situation, the Company insists nevertheless, that the Government is liable and cites, among other cases, *Hollerbach* v. *United States,* 233 U. S. 165; *Christie* v. *United States,* 237 U. S. 234; *United States* v. *Atlantic Dredging Co.,* 253 U. S. 1; *United States* v. *Smith,* 256 U. S. 11, and insists that, though the asserted representations of fact in the present case differ somewhat from those made in the cited cases, they are the same in principle, and that the provisions in paragraph 23 that " the work required to complete this portion [the portion of the proposed canal lying between certain cross sections] of the canal shall be performed in the dry "—was not only a mandate but was necessarily a representation that conditions would be encountered which would enable the work to be done in the dry.

A systematic explanation of the cases would extend this opinion to too great a length. They all declare the prin-

ciple that the Government will be liable in the same circumstances that private individuals would be liable, but necessarily, neither is liable if neither make representations.

In *Hollerbach* v. *United States*, 233 U. S. 165, 172, the Government was held liable because "the specifications spoke with certainty as to a part of the conditions to be encountered by the claimants" and of those, it was said, "the Government might be presumed to speak with knowledge and authority."

In *Christie* v. *United States*, 237 U. S. 234, "there was" (we quote from the opinion) "a deceptive representation of the material, and it misled". The claimants in the case, it was said, were forced to rely upon the information furnished them by specifications which were untrue and known to the officers of the United States to be untrue. To the extent that they were untrue claimants recovered. As to other conditions which might or might not have been foreseen it was to be supposed, it was said, "that contemplation and judgment were exercised not only of certainties but of contingencies and allowance made for both at the time of bidding, with provision in the bid".

In *United States* v. *Atlantic Dredging Co.*, 253 U. S. 1, the representations made by the Government were deceptive in that the test borings gave information to the Government, not imparted to bidders, of materials more difficult to excavate than those shown by the maps and specifications. The case is instructive as it considers other cases and the grounds of their decisions.

The elements which existed in each of the cited cases are absent from the case at bar. In the case at bar the Government undertook a project and advertised for bids for its performance. There was indication of the manner of performance but there was no knowledge of impediments to performance, no misrepresentation of the conditions, exaggeration of them nor concealment of them,

nor, indeed, knowledge of them.   To hold the Government liable under such circumstances would make it insurer of the uniformity of all work and cast upon it responsibility for all of the conditions which a contractor might encounter and make the cost of its projects always an unknown quantity.   It is hardly necessary to say that the cost of a project often determines for or against its undertaking.

*Judgment affirmed.*