## LOVELAND et al. v. UNITED STATES.

District Court, D. New Jersey, April 9, 1927.

1. **United States ⊂⊃70(1), 125(1)—Government, making contracts with individuals and subjecting itself to suits arising thereunder, submits to all rules of contract construction and court procedure prevailing between individuals.**

When the government enters into contracts with individuals and subjects itself to suits for settlement of questions arising under such contracts, it submits to all the rules of contract construction and court procedure that prevail between private parties.

2. **Insurance ⊂⊃388(3)—Course of dealing with knowledge of facts constituting breach of condition in policy may estop insistence on forfeiture.**

A course of dealing by insurer with knowledge of facts constituting breach of a condition in a policy, leading insured honestly to think that conformity thereto will not result in forfeiture, estops insurer from insisting on forfeiture.

3. **Army and navy ⊂⊃51½—Government held estopped to assert forfeiture of war risk insurance policy.**

Government, in action on war risk insurance policy, *held* estopped by its course of dealing with insured from asserting forfeiture of policy for nonpayment of premium.

At Law. Action by John Winthrop Loveland and others, substituted for Florence Lee Loveland, against the United States. Judgment for plaintiffs.

Shelton Pitney, of Newark, N. J., for claimants.

Walter H. Bacon, Asst. U. S. Atty., of Bridgeton, N. J., and T. J. Williamson, of U. S. Veterans' Bureau, of Washington, D. C., for the United States.

BODINE, District Judge. This is a suit upon a policy of war risk insurance in the sum of $10,000. The jurisdiction of the court is conceded, as well as the material facts.

Capt. John W. Loveland, Jr., entered the military service of the United States May 15, 1917. He was honorably discharged July 1, 1919. He was then in poor health. He died October 29, 1919, after an illness of six days' duration. While in the service, he made application for the war risk insurance policy in question. This policy was payable to his mother, and in the event of her death to his two sisters. The insured's mother died without securing the benefits by which he sought to protect her. Insurance premiums were paid up until August 31, 1919.

The plaintiff takes the position that the insurance was term insurance, effected for a yearly term, with the right of renewal for subsequent yearly terms, based upon the age of the insured. The insured's birthday was in June, so that each July a new term at a new rate could be effected. Monthly payments were a mere convenience.

The government's position is that, by reason of the nonpayment of the August and September premiums, the policy lapsed under department regulations. The plaintiff takes the position that the government is estopped from asserting the lapse of the policy under the peculiar circumstances of this case, which will hereafter be related.

[1] Obviously, when the government enters into contracts with individuals and subjects itself to suits for settlement of questions arising under such contracts, it submits to all the rules of contract construction and court procedure that prevail between private individuals. MacArthur Bros. Co. v. United States, 258 U. S. 6, 42 S. Ct. 225, 66 L. Ed. 433; United States v. Smith, 256 U. S. 11, 41 S. Ct. 413, 65 L. Ed. 808; United States v. Atlantic Dredging Co., 253 U. S. 1, 40 S. Ct. 423, 64 L. Ed. 735; United States v. Spearin, 248 U. S. 132, 39 S. Ct. 59, 63 L. Ed. 166; Christie v. United States, 237 U. S. 234, 35 S. Ct. 565, 59 L. Ed. 933; Hollerbach v. United States, 233 U. S. 165, 34 S. Ct. 553, 58 L. Ed. 898. The rule was stated quite recently by Mr. Justice Holmes in Standard Oil Co. v. United States, 267 U. S. 79, 45 S. Ct. 212, 69 L. Ed. 519, as follows:

"When the United States went into the insurance business, issued policies in familiar form, and provided that in case of disagreement it might be sued, it must be assumed to have accepted the ordinary incidents of suits in such business."

[2] As between individuals and private insurance companies, the following authorities are illuminating. The Supreme Court said in New York Life Ins. Co. v. Eggleston, 96 U. S. 572, 24 L. Ed. 841, as follows:

"We have recently, in the case of Insurance Company v. Norton, supra [96 U. S.] 234 [24 L. Ed. 689], shown that forfeitures are not favored in the law, and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture,

though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture."

The Circuit Court of Appeals for the Fifth Circuit in New York Life Ins. Co. v. Dumler, 282 F. 969, quoted with approval the following from 14 Ruling Case Law, 1180:

"Any acts, declarations, or course of dealing by an insurer, with knowledge of facts constituting a breach of a condition in a policy, leading the person insured honestly to think if conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, estops the insurer from insisting on the forfeiture."

In Railway Mail Association v. Moore, 15 F.(2d) 547, the Circuit Court of Appeals for the Fourth Circuit said:

"The rule is that courts do not favor forfeiture, and, where doubts arise as to the proper construction of an insurance contract, that view should be adopted which is most favorable to the insured and will prevent an annulment of the policy."

In Thompson v. Knickerbocker Life Ins. Co., 104 U. S. 258, 26 L. Ed. 765, the Supreme Court said:

"It is always open for the insured to show a waiver of the condition, or a course of conduct on the part of the insurer which gave him just and reasonable ground to infer that a forfeiture would not be exacted."

In the case of Hartford Life, etc., Co. v. Unsell, 144 U. S. 439, 12 S. Ct. 671, 36 L. Ed. 496, the Supreme Court approved as substantially accurate the charge to the jury of the court below containing the following (referring to the payment of premiums by the insured):

"The question is for you to consider and determine from all of them, and from the whole course of business, whether, as a prudent business man, he had a right to believe that it was immaterial whether he paid on the day or a few days later. If the course of conduct was such that he had a right to believe that he could pay only in good health, then there was no waiver applicable to the case at bar. It must have been such a course of conduct as would lead a reasonably prudent man to believe that the company was willing to take payment, sick or well."

[3] The correspondence between the parties indicates that the War Risk Insurance Bureau and Capt. Loveland believed the insurance was still in effect. On July 1st Capt. Loveland addressed the Bureau, inclosing his check, and requested "complete information regarding the conversion of this insurance in-

to straight life, endowment, or any other form of insurance which the government is going to handle."

On August 29th, a partial reply was received, concluding with the phrase, over the signature of the Assistant Director, "Please do not hesitate to write me again." There is not a word in this letter urging the insured to make prompt remittance of his premium, or advising him that his policy would be forfeited if he did not do so. Indeed, the Bureau, about the same time, wrote him a letter in which the following appears: "However, your present term insurance will actually protect your family against the loss of your earning power, which would come with your death or total and permanent disability."

Capt. Loveland replied to the Assistant Director of the Bureau, in a letter dated August 29th, asking whether he could continue his term insurance at the rates prevailing during the war for the next few months, until he was settled in business, and then convert it into a permanent form of government insurance. He also asked *to whom these payments were to be made and the amount of the monthly premium for ages 28 and 29, and stated that he was in arrears for July and August because he had been waiting for a reply to his request for information.* He closed his letter with the following significant sentences:

"The original amount of my insurance was $10,000, and I wish to carry this whole amount at the term insurance rates for the present, and later convert all or part of it into permanent insurance. Upon your reply stating the amount due to carry my insurance at term rates for $10,000 and the amount due you for the July and August premiums, I will be pleased to mail you a check for that amount. Hoping for a reply at your earliest convenience, I am."

The Bureau did not answer this letter. The policy of insurance did not state the amount of the premium. The rate changed from year to year with the age of the insured, and the premiums were deducted from his pay while in service. Capt. Loveland was inquiring as to the changes he could effect in his insurance. He was not told that the insurance had lapsed. He was not advised that it would lapse unless premiums were paid. His letter seeking information remained unanswered. Premium notices were sent out as though the policy had not lapsed, and even after notice of his death the unpaid premiums were asked for and received, clearly a waiver of the technical defense of lapse by reason of nonpayment of $6.70. Knights of Pythias v. Kalin-

ski, 163 U. S. 289, 16 S. Ct. 1047, 41 L. Ed. 163. The only explanation offered is that the government was not entirely at ease in the early years of engaging in the eleemosynary business of writing insurance.

Fortunately there is not one standard of conduct for an individual, who engages in business, and a less reasonable standard for the government, when it embarks upon the charted sea of business. If Capt. Loveland had lived after October 29th, and received his premium notice, and made payments, his insurance would still be in effect. Honest dealing would have required the Bureau, when it received his letter of August 29th, after the forfeiture was effected, to let him know that by payment of the premiums then due he could reinstate his insurance. It let this officer of the United States go to his death with the assurance, made in its letter in part quoted above, that his present term insurance would actually protect his family against the loss of his earning power in case of death. It never even asked for the $6.70 it now claims was necessary to prevent a forfeiture.

Capt. Loveland undoubtedly believed that his insurance was still in effect, and the conduct of the Bureau was such as to reasonably lead any reasonable man to the same conclusion. Since a private insurance company would be estopped from asserting to the contrary, the Bureau of War Risk Insurance is by the same principle estopped.

Let the plaintiff recover accordingly, with interest.