## H. W. GOLDEN & SON, Inc., v. INHABITANTS OF TOWN OF MARBLEHEAD.
### No. 2819.

Circuit Court of Appeals, First Circuit.

Feb. 16, 1934.

Thomas Hunt, of Boston, Mass. (James C. Reilly and Gaston, Snow, Saltonstall & Hunt, all of Boston, Mass., on the brief), for appellant.

R. G. Dodge, of Boston, Mass. (Raymond H. Trefry, of Salem, Mass., and John M. Raymond, of Boston, Mass., on the brief), for appellees.

Before WILSON and MORTON, Circuit Judges, and LETTS, District Judge.

LETTS, District Judge.

This is an action brought by H. W. Golden & Son, Inc., a New York corporation, against the inhabitants of the town of Marblehead, a Massachusetts municipal corporation.

The action is founded upon two written contracts, both dated September 17, 1929, between the plaintiff corporation and the town of Marblehead, having to do with the construction of sewers in that town. The plaintiff seeks to recover damages incurred in the performance of these two contracts, and as grounds therefor alleges in count 5 of its declaration, all other counts having been abandoned at the trial, that the defendant, at the time of inviting bids for the construction of the sewers in question and at the time of entering into the contracts, warranted that the underground rock to be removed was of usual character with respect to the qualities affecting the ease of its excavation and that it could be removed by

light blasts. Whereas, in fact, the count alleges, the rock was of unusual character peculiar to the locality and possessed unique characteristics of resistance to drilling, blasting, and breaking and presented such difficulties in its excavation as to entail great expense and loss to the plaintiff contractor.

The two contracts referred to as Nos. 15 and 16, respectively, are so nearly identical in terms as here to necessitate no separate consideration. By its bill of particulars, filed in the case in compliance with defendant's motion, the plaintiff has specified that it relies upon an oral representation that "the only thing unusual about the job is the narrow and crooked streets" and also upon two written representations embodied in the specification clauses of the contracts, to wit, that "all rock excavation in narrow streets, or within ten (10) feet of an existing water or gas main shall be done with very light charges of explosive." And the further representation that "the rate of progress shall be such that the entire work will be completed within six (6) months from the date of the signing of the contract." At the conclusion of the plaintiff's case, counsel for the plaintiff seemingly abandoned any contention based upon the alleged oral representation and stated to the court that the plaintiff was "relying entirely upon the statements set forth within the terms of the contract itself." The trial court directed a verdict for the defendant. The only assigned errors now before us relate to the direction of the verdict and the entry of judgment incident thereto.

It appears from the "Information for Bidders" which was furnished the plaintiff, as well as in the body of the contracts signed, that ample notice was given the plaintiff that the undertaking which it entered into involved the excavation of a large amount of rock. The plaintiff also stated at the time of submitting its bid in its proposal that "he has carefully examined the location of the proposed work, the annexed form of contract and the plans therein referred to." It appeared from the oral testimony presented that the rock formation underlying Marblehead, while of a hard and tenacious quality, was readily observable from many outcroppings throughout the locality and that there were available governmental documents describing the kind and character of the rock found in that locality.

From the testimony of Mr. Golden, president of the plaintiff corporation, it appears that prior to signing the contracts he had visited Marblehead for about a day and that:

"Knowing that there was considerable rock to be removed, he started to make observations for excavations, meaning by that, that he examined the rock where it outcropped to ascertain the method of taking it out and the ease or difficulty of doing so; that in observing the rock he noted where it had been worked so that he could judge whether they had any great difficulty in working on it, and watched the cleavage to get some knowledge of the ways it had to be removed."

Golden further testified that after he had signed the contracts in question, but before they had been executed on behalf of the town, he had a conversation with the town engineer, Mr. Barbour, who said:

"Golden, you cannot do that job for your price. You are going to encounter rock there that you have never encountered before. That rock has been pushed up by a terrific heat. You don't know what you are getting into."

The plaintiff, however, irrespective of this warning, accepted the contracts and entered upon the work. While it appears that progress was slow, necessitating an extension of time and entailing a substantial loss to the plaintiff, the work was otherwise completed in accordance with the terms of the contracts and by utilizing no other explosives than those of the character specified. Nowhere in the contracts is there any express, nor basis for an implied, warranty in regard to the amount of man labor which would be necessary to supplement the use of explosives in carrying out the work. The plaintiff contends that a warranty as to the character of the rock to be removed is to be inferred from the period of time specified in the contracts for the completion of the work. We do not think so, particularly in view of the fact that there is no evidence indicating that by the use of more men and the employment of more equipment the task could not have been completed on time. Such a suggestion is not to be drawn from the fact that the town did not insist upon its full rights and did allow the plaintiff additional time to complete its contract.

If there be any basis for the plaintiff's present claim, he had ample warning, not only prior to the commencement of the work, but before the contracts had in fact been fully executed. It is true that at this time the bids appear to have been accepted. The plaintiff could, however, in view of the warning given, have readily ascertained the facts and notified the town officials that the bids were withdrawn and justified doing so upon

the same grounds which are now asserted as the basis of this action. Instead the plaintiff, in the face of warning and opportunity to inspect, proceeded with the contracts. With the hardships entailed by this action, the plaintiff must abide. The contracts themselves provided that the contractor " * * * shall bear all losses resulting to him on account of the amount or character of the work, or because the nature of the land in or on which the work is done is different from what was estimated or expected, or on account of the weather, elements or other causes; * * * "

That a hardship was worked, there is no doubt, but this court has no authority to rewrite the contracts between the parties or to relieve either from the burden of an unwise bargain.

The case of Day v. United States, 245 U. S. 159, 38 S. Ct. 57, 58, 62 L. Ed. 219, was an action brought to recover for work and material furnished to build a bulkhead and temporary dams in order to protect work already completed and in progress against an extraordinary flood. The contract involved required the contractor to furnish labor and materials necessary to complete the building of a canal and locks and placed upon him the obligation for the preservation and good condition of work already completed or undertaken until such time as the work should be turned over to the government completed. The contract clearly contemplated delays and obstacles from freshets. The flood conditions encountered, however, were beyond the anticipation of either party. The court in holding, however, that the risk and cost of protecting the work from floods was upon the contractor, said:

"One who makes a contract never can be absolutely certain that he will be able to perform it when the time comes, and the very essence of it is that he takes the risk within the limits of his undertaking. The modern cases may have abated somewhat the absoluteness of the older ones in determining the scope of the undertaking by the literal meaning of the words alone. * * * But when the scope of the undertaking is fixed, that is merely another way of saying that the contractor takes the risk of the obstacles to that extent."

The case of Simpson v. United States, 172 U. S. 372, 19 S. Ct. 222, 225, 43 L. Ed. 482, was a claim for extra labor and materials in connection with the construction of a dry dock occasioned by an unforeseen quicksand condition encountered in the construction of foundations. The court, in holding that the burden must be borne by the contractor under the terms of his contract, said:

"The contractors were experienced and competent dock builders. If it had been their intention to only undertake to build the dock for the price stipulated, provided a guaranty was afforded them by the United States that the soil upon which the dock was to be constructed was to be of a particular nature, conforming to a plan then existing, a purpose so important, so vital, would necessarily have found direct and positive expression in the bid and specifications, and would not have been left to be evolved by a forced and latitudinarian construction of the word 'available,' used only in the nature of a recital in the specifications, and not in the contract. The fact that the bidders knew that a test of the soil in the yard had been made, and drew the contract providing that the dock should be located on a site to be designated by the United States without any express stipulation that there was a warranty in their favor that the ground selected should be of a defined character, precludes the conception that the terms of the contract imposed such obligation on the government, in the absence of a full and clear expression to that effect, or at least an unavoidable implication."

It will be noted in the Simpson Case, supra, that the claimant endeavored to rely upon an implication of warranty similarly as in the case at bar, except that in the matter now before us it is sought to deduce a warranty from the specification of time within which the work was to be done; whereas, in the Simpson Case it was sought to imply a warranty on the basis that "available site" meant a site where unanticipated subsoil conditions would not be found.

See, also, the case of MacArthur Bros. Co. v. United States, 258 U. S. 6, 42 S. Ct. 225, 66 L. Ed. 433.

In the latter case several of the authorities relied upon by the plaintiff here are reviewed and clearly distinguished as to principle from the issue involved in the present suit. In fact, an examination of all the authorities cited by counsel for the plaintiff discloses that they go no further than to hold that if a contractor undertakes a piece of work on the basis of definite specifications which are within the knowledge of the other contracting party, or in respect to which that contracting party assumes responsibility, or where there is an unconscionable withholding of information within the knowledge of the

other contracting party, the contractor cannot then be held to have assumed the added burdens or risks incident to such altered facts or such undisclosed known facts. No such factors are involved in the matter now before us. The trial judge was clearly right on the face of the record in directing a verdict for the defendant.

The judgment of the District Court is affirmed, with costs to the appellees.