No. 34,007

DAN SCHERRER and GEORGE BENNETT, doing business as The Scherrer-Bennett Construction Company, *Appellants*, v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellee*.

(80 P. 2d 1105)

Opinion filed July 9, 1938.

*Donald H. Corson*, of Kansas City, and *Roland Boynton*, of Topeka, for the appellants.

*Lester M. Goodell*, assistant attorney general, and *Otho W. Lomax*, of Topeka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for money. Judgment was for defendant sustaining a demurrer to the petition. Plaintiff appeals.

The petition first stated the formal allegations necessary. It then alleged that plaintiffs on June 13, 1936, entered into a contract with defendant to construct a portion of the state highway system. Under the terms of the contract the advertisement, proposal, bond, specifications and plans were all made a part of the contract and were made a part of the petition. The petition then stated that defendant, in its request for bids, stated:

"Detailed information of the work to be done may be had by an examination of the plans and specifications on file . . . at the offices of the State Highway Commission."

The petition also stated that the contract price provided was to be the fixed price per cubic yard for all material moved without

consideration as to whether this material might be earth or rock; that as a basis for computing the bid upon such work, and to arrive at an unclassified bid for the removal of all material of every kind it was necessary that such bidders have information as to the character of material to be moved and for the proportionate amount of each class so as to determine a fair average cost of the moving of all of such material as a whole at a fixed unclassified price per cubic yard.

The petition then stated that plaintiffs procured from defendant the plans, profiles and cross sections showing in detail how the work was to be constructed, and the amount of earth, rock and other material that would be encountered and the different character and classifications of it; that from such plans and cross sections furnished by the defendant and in reliance thereon plaintiffs computed the cost of moving each of the different classes of materials of the kind thereof in the amounts as shown in such plans, and from such amounts and costs computed the average cost of moving such material and from such computation so made plaintiffs submitted to the defendant a proposal to move all of such material at a cost of thirty cents per cubic yard, which was a fair and reasonable price based upon the quantities and proportions of the various classes of material involved, as shown by such plans and cross sections. The petition then alleged the completion of the contract and its acceptance by defendant. It also alleged that by the plans and specifications defendant represented the material to be moved was in accordance with the figures shown on these plans and profiles and cross sections, but that the information thus furnished was incorrect because it was represented that there were 54,850 yards of rock, while, as a matter of fact, plaintiffs were required to move 93,386.4 yards; that the fair value of the labor of moving this rock was 75 cents a cubic yard, or $70,039.80. The petition then alleged that plaintiffs relied solely upon these plans and cross sections; that they had no independent information of the classes of material to be moved, and that they would not have made the bid at the price that was in the contract had they known that proportions of the different classes of material to be moved were different from the amount represented; that as a result of the erroneous information received plaintiffs were required to perform additional labor that was not apparent from the erroneous cross sections; that they made an inspection of said premises and as a result of said inspection

found nothing out of the ordinary, and from the length of time allowed to make said bid had no other independent means of ascertaining the amount of rock to be moved at said place other than from said plans and cross sections; that these plans were prepared by agents of defendant after making borings and other technical lists and that defendant and its agents knew, or by the exercise of reasonable care should have known that the plans were misleading. The petition then alleged that the plans showed the following amounts of material to be moved:

|  | Cu. yds. |
|---|---|
| Earth | 98,254 |
| Borrow pit | 74,161 |
| Channel | 83,071 |
| Total | 255,756 |
| Rock | 54,850 |
| Special | 15,342 |
| Total | 325,948 |

The petition then alleged that they have been paid $102,461.31 for removing 341,537.7 yards of earth and rock; that this amount was computed as follows:

|  | Cu. yds. |
|---|---|
| Earth | 87,518.6 |
| Borrow pit | 83,106.3 |
| Channel | 69,037.7 |
| Total | 239,682.6 |
| Rock | 93,386.4 |
| Special | 8,468.7 |
| Total | 341,537.7 |

341,537.7 cu. yds. @ 30¢ = $102,461.31.

The petition alleged that they should have been paid as follows:

| | |
|---|---|
| 170624.9 cu. yds. @ .20 | $34,124.98 |
| Channels and Special 77506.4 cu. yds. @ .225 | 17,438.94 |
| Rock, 93386.4 cu. yds. @ 75 | 70,039.80 |
| Total | $121,603.72 |

Plaintiffs prayed judgment for the difference between $121,603.72 and $102,461.31 or $19,142.41.

The demurrer of defendant to this petition was sustained on the ground that it did not state facts sufficient to constitute a cause of action. The appeal is from that judgment.

The story told by the petition is that defendant told plaintiffs

how much rock and how much earth there was to be moved; that plaintiffs had a right to rely on this statement; that they calculated the labor necessary to move this much rock and this much earth in the proportions given and made the bid accordingly; that when there was so much more rock than they figured on, this threw their calculations off, with the result that their bid was lower than it would have been had the proper proportions of rock and earth been shown; that they should be permitted to recover for the amount of rock removed, at a fair price.

It will be seen that the answer to this contention depends on whether plaintiffs were entitled to rely on the statements made by defendant as to the amount of earth and rock to be moved.

Plaintiffs point out G. S. 1935, 68-409. That section provides as follows:

"Before advertising for bids for any contract as provided in the preceding section said state highway commission shall provide plans and specifications of the proposed work or improvement, which plans and specifications shall be displayed for the inspection of bidders at the office of the state highway commission and in the office of the county clerk in the county or counties where work is to be done at least fifteen days before the time for receiving bids."

Plaintiffs argue that since the statute provides that these plans and specifications are for the use of bidders the legislature could not have intended that these plans should be prepared in such a way as to mislead the bidder to his damage without compensation being made because of such misrepresentations.

As a part of the amended petition there was filed with the clerk of the court a supplement to the petition which included the plans, specifications, proposal, notice to contractors and contract bond. An examination of these documents is necessary to a correct decision of this question.

The first step taken when a contract is to be let by the highway commission is to make the preliminary survey and prepare plans. As a part of this work holes are bored in the ground at certain intervals so that an idea may be obtained as to how much earth and how much rock will have to be moved. The results of these borings are noted on the blueprint. The plans are then prepared and a blue print of the road is prepared, both as it would look from above, and in profile. The grade upon which the road will be constructed is shown upon this blue print, also the plans where the borings were made, and the depth to which they were made. The plans and blue

prints are then filed in the office of the highway commission at Topeka, and one copy is filed with the county clerk of the county where the road is to be located. These plans are available to any contractor who wishes to bid on some particular job. Along with these plans is a copy of "Standard Specifications for State Road and Bridge Construction." This is a printed book of 225 pages. It contains specifications that cover about every possible contingency that might arise in building a road. It is standard throughout the United States since the plans and specifications must be approved by the "Bureau of Roads." It is in the possession of every contractor who does any considerable amount of road building and every contractor is familiar with its terms. By reference it is made a part of every road-building contract. These plans and specifications were prepared in this case and were displayed at the office of the highway commission and the office of the county clerk in compliance with G. S. 1935, 68-409.

The next step is for the commission to advertise for bids. This is sometimes referred to as the notice. It first describes the job briefly so that contractors may be able to identify the plans. Among the provisions with which we are interested is the following:

"Detailed information of the work to be done may be had by an examination of the plans and specifications on file in the offices of the county clerk of the county in which the work is located, or at the offices of the state highway commission."

It also provided that the bids would be received at Garnett until 9 a. m. May 16, 1936. Thus it will be seen that sixteen days elapsed between the publication of the notice and the last day upon which bids could be submitted.

The next step is the submitting of the bids or proposals by contractors who are interested in obtaining the contract. These proposals are submitted on a form furnished by the commission. Before this step is taken the contractors will have examined the plans and specifications. In this proposal the contractor offers to construct the road in question according to the plans and specifications as set forth in the schedule of prices. This schedule of prices, it should be noted, is a part of the plans and specifications. There are other provisions and there are the following paragraphs with which we are concerned:

"The undersigned further declares that he has carefully examined the plans, specifications, form of contract and special provisions, if any, and that he has

inspected the actual location of the work, together with the local sources of supplies, and has satisfied himself as to all quantities and conditions, and understands that in signing this proposal he waives all rights to plead any misunderstanding regarding the same. . . . The undersigned further agrees that the quantities enumerated are not guaranteed by the commission, and with such an understanding he accepts the quantities as tentative and agrees to receive payment at the unit prices for work performed. The classification of culvert, bridge or highway excavation shown on the plans is not guaranteed and where contracts are awarded on unclassified excavation the unit price bid shall include any and all excavation encountered on the work regardless of the classification shown on the plans."

After this bid was received and it was discovered to be the low bid some time elapsed while the final contract was being prepared.. On June 13, 1936, one month and thirteen days after the notice was published this contract was signed by plaintiffs. These plans and specifications were made a part of this contract. It is necessary then for us to examine them. First, a word about the schedule of prices to which reference was made in the proposal. Most of the work to be done in the building of a road naturally consists of moving either earth or rock. Sometimes the notice recites that the bid shall be so much per yard for moving earth and so much per yard for moving rock. At other times the approximate amount of rock and the approximate amount of earth is given in the plans and the bidder is asked to make a bid on the yardage basis, the same amount per yard of material moved whether it is earth or rock. That plan was followed in this case. Such a plan is referred to as a bid on unclassified material. In such a case the contractor examines the plans and the local situation with the idea of ascertaining as nearly as possible what proportion the amount of rock bears to the amount of earth. If there is a small amount of rock and a great deal of earth the unit price bid will be lower than if there is a large amount of rock and a small amount of earth. It will be seen that one of the enigmas of the contracting business is the necessity for a determination of these amounts as correctly as possible. Two paragraphs of the specifications are of interest to us here. They are as follows:

"2.2 INTERPRETATION OF ESTIMATES—The quantities listed in the proposal forms are to be considered as approximate and are to be used for the comparison of bids. Payment to the contractor will be made for the actual quantities only of work performed or materials furnished in accordance with the plans and specifications and it is understood that the quantities of work to be done and materials furnished may each be increased or diminished as hereinafter provided without in any way invalidating the bid prices.

"2.3 Examination of Plans, Specifications and Site of Work—The bidder is required to examine carefully the site of the proposed work, and the proposal, plans, specifications and contract forms, for the work contemplated, and it will be assumed that the bidder has investigated and is satisfied as to the conditions to be encountered, as to the character, quality and quantities of work to be performed and materials to be furnished and as to the requirements of the specifications and contract. It is mutually agreed that submission of a proposal shall be considered conclusive evidence that the bidder has made examination."

Plaintiffs argue that before making their bid they examined the plans and specifications and went out upon the location and examined the land, but that they did not have time to make the examination by means of test borings, and so forth, that was made by defendant. It is argued that they relied upon the information shown by the plans, profile and cross sections shown on the blue prints at the office of the commission. It should be stated here that there is no fraud or bad faith on the part of the commission either pleaded or argued.

When the bidder examined the plans and profiles it is to be assumed that he also examined the specifications and all the paragraphs of it. When he did so he must have seen the paragraph wherein it was provided that the submission of a proposal would be considered conclusive evidence that they had investigated the work contemplated for the very purpose of avoiding as nearly as possible the occurrence of the difficulty with which we are now confronted. At the outset this was a challenge of their attention to the necessity of making their own investigation. Having examined the plans and specifications the plaintiffs signed a proposal. This proposal, besides the statement that plaintiffs would do the work, contained a paragraph already set out in this opinion to the effect that plaintiffs had made the investigations to which reference had been made in the specifications. Plaintiffs must be presumed to have made the proposal with knowledge of the provisions of this paragraph.

Besides this paragraph, the proposal contained another that refers specifically to the situation we are considering. In it plaintiffs agreed that the quantities enumerated were not guaranteed by the commission and that they understood that they were tentative. The portion of this paragraph with which we are interested is as follows:

"The classification of culvert, bridge or highway excavation shown on the plans is not guaranteed and where contracts are awarded on unclassified ex-

cavation the unit price bid shall include any and all excavation encountered on the work regardless of the classification shown on the plans."

This sentence in the paragraph could apply to nothing else than the situation we are considering, that is, in view of the method of calculating the amount of a bid for unclassified excavation plaintiffs agreed to carry out whatever excavation there was to be done at the unit price bid regardless of the classification shown on the plans. As the contract was finally executed all these provisions were a part of it.

How can a contractor who examined these plans and specifications, made this proposal, and signed this contract, say he had a right to rely on the quantities named in the plans? The very nature of the type of bid called for precludes such a construction. The bid being asked to be made on unclassified excavation was notice to plaintiffs that a careful examination should be made so that the proportion of rock and earth might be known and correctly calculated.

Plaintiffs bring several authorities to our attention and rely on them to sustain their position. Many of them are federal cases. Some of them are discussed and distinguished in *MacArthur Bros. Co. v. United States,* 258 U. S. 6, 11, 42 S. Ct. 225, 66 L. Ed. 433. In that case the petition of the plaintiff alleged that the government had misrepresented a proposed contract by stating that a portion of the work would be done in the "dry" and a portion of it in the "wet" at a cost greatly exceeding what it would have been had it been done the other way. The contractor had made a proposal and examined specifications containing provisions about the same as those we have here. The company contended certain conditions and surrounding circumstances amounted to misrepresentation by the United States. In dealing with this contention the court said:

"But in reality there was no representation by the government, nor is it alleged that the government had knowledge of the conditions or means of knowledge superior to the knowledge of the company. The latter acquired knowledge only by the aid of divers as its work progressed. Such being the situation, does not the case present one of misfortune rather than misrepresentation? It is true that the government's proposal was for a certain part of the work to be done in the dry, but it made no representation of the conditions that existed enabling it to be so done or precluding it from being so done." (p. 11.)

The court then distinguished certain cases that were relied on by plaintiff in that case and are relied on here by plaintiffs. The

case of *United States v. Atlantic Dredging Co.*, 253 U. S. 1, 40 S. Ct. 423, 64 L. Ed. 735, is of interest to us here. In that case the government had made certain borings and discovered certain material. This material was correctly noted on the field notes, but the blue prints did not show the field notes. The material actually discovered was much more difficult to work with than was shown on the plans. The court held that this was an actual misrepresentation, since the United States had some knowledge of facts it did not disclose to the bidders. The case is of interest to us here because had plaintiff pleaded that defendant made borings, discovered rock and then failed to note this rock on the blue prints we would feel bound to follow the Atlantic Dredging Company case. However, no such claim or pleading is made by plaintiffs in this case. We feel that the MacArthur Brothers case is in point here. See, also, *H. W. Golden & Son v. Inhabitants of Town of Marblehead*, 68 Fed. 2d 875, also *Elkan v. Sebastian Bridge Dist.*, 291 Fed. 532. Plaintiffs rely on *Maney v. Oklahoma City*, 150 Okla. 77, 300 Pac. 642. We have examined that opinion and find that the specifications in that case provided that the excavation would be all earth with a negligible amount of rock; that while a large amount of rock was found, as a matter of fact, when this rock was found the attention of the city engineer was called to it; that the contractor was directed to go ahead with the contract and to keep track of the amount of rock removed. The decision turned upon the theory that the city had waived its right to insist upon the performance of the contract as written. We do not regard the case as an authority for the propositions urged here by the plaintiffs. Authorities more nearly analogous are *Leary v. City of Watervliet*, 222 N. Y. 337, 118 N. E. 849; also, *Palmberg v. City of Astoria*, 112 Ore. 353, 229 Pac. 380.

We are not impressed with the argument of plaintiffs that they did not have time to make borings on their own account. Plaintiffs were not compelled to bid on this particular contract. They made an investigation of the blue prints and specifications and of the actual site of the proposed work. If this investigation was not sufficient they could have refused to bid or could have asked for more time. They did neither. Having seen fit to go ahead and bid they are bound by the provisions in the paragraphs noted. The demurrer of defendant to the petition was correctly sustained.

The judgment of the trial court is affirmed.