Williams Judge,
delivered the opinion of the court:
The plaintiffs, trustees in bankruptcy for Foote Bros. Gear & Machine Company, seek recovery of $2,268.20, the value of materials demanded by the defendant and furnished by Foote Bros. Gear & Machine Company, alleged to be in excess of materials required to be furnished under a contract with the United States; also for $275, an amount deducted and withheld upon final settlement as liquidated damages because of delay in delivery of certain materials. For convenience Foote Bros. Gear & Machine Company will hereinafter be referred to as the plaintiff.
In March 1931 plaintiff received from the War Department an invitation for bid “for furnishing all labor and materials and performing all work for furnishing, delivering and installing, ready to operate; or furnishing and delivering only, gate and valve operating machinery, including motors, switchboards, controls, wiring, handrails, motor and machine covers, recess covers, gratings, etc., for Guard Lock in Inland Waterway at Great Bridge, Va.” Specifications, schedules and drawings covering the work to be performed and the materials to be furnished accompanied the invitation for bid. In the specifications it was stated:
Bids will be required as follows:
Proposal A: For furnishing, delivering, and installing eight (8) units of gate operating machinery; eight (8) units of valve operating machinery; all handrails, motor and machine covers, bridges and gratings for eight (8) units of gate operating machinery; and all ladders, motor and machine covers, recess covers, gratings, etc., for eight (8) units of valve operating machinery.
Proposal B: For furnishing and delivering only, the material mentioned in Proposal A, above.
If the contract provided for furnishing and delivering only, delivery was to be completed within 150 calendar days after date of receipt of notice to proceed, liquidated damages at the rate of $25 to be paid for each calendar day of delay by the contractor.
*342 In response to the invitation the plaintiff, on or about April 11, 1931, submitted a bid under proposal B, only as follows:
Item. (1) : For furnishing and delivering only, eight (8) units of gate-operating machinery at thirty-one hundred fifty dollars and — cents ($3,150.00) per unit-$25,200. 00
Item (2) : For furnishing and delivering only, eight (8) units of valve-operating machinery at seventeen hundred fifty dollars and — cents ($1,750.00) per unit- 14,000.00
Item (3) : For furnishing and delivering only, all handrails, motor and machine covers, bridges, and gratings for eight (8) units of gate-operating machinery at two hundred dollars and — cents ($200.00) per unit- 1,600.00
Item (4) : For furnishing and delivering only, all ladders, motor and machine covers, recess covers, gratings, etc., for eight (8) units of valve-operating machinery at two hundred dollars and — cents ($200.00) per unit— 1,600.00
Total_ 421,400*. 00
The plaintiff’s bid was accepted and a contract was thereafter entered into between the plaintiff and the United States whereby the plaintiff agreed to furnish and deliver the articles enumerated in proposal B of its bid, at the prices therein stated, in accordance with the specifications, schedules, and drawings, all of which were made a part of the contract. The plaintiff thereafter delivered to the defendant at the point stipulated in the contract all the articles enumerated in the contract, and the same were inspected and accepted by the defendant. All the articles enumerated were delivered by the plaintiff within the time specified except certain patterns described in the specifications, which were delivered 11 days after the expiration of the stipulated date.
After the articles above mentioned had been delivered by plaintiff and accepted by the defendant, and after the defendant had entered into a contract with another party for their installation, the contracting officer wired plaintiff that certain articles shown on the plans had not been received. ■These articles included power and lighting cables and wires, switches, boxes, conduits, condulets, fuses, bushings, lock-nuts, bolts, screws, washers, rubber and friction tape, solder *343 ing paste, connectors, and other articles appropriate to the electrical connection and lighting of various parts of the lock mechanism, all being materials necessary to the proper installation of the articles furnished and delivered by plain-tiif. The plaintiff immediately by wire and letter protested the demand that it furnish and deliver the additional materials, contending that the delivery of such materials was not included in its bid and did not come within the contract terms. However, upon the insistent demand of the defendant and with the understanding that it was complying under protest and would ask for reimbursement for the cost of the additional materials and an adjustment of the matter of liquidated damages, the plaintiff furnished and delivered such materials at an actual cost of $2,062.00.
After the additional articles mentioned had been delivered by plaintiff and accepted by the defendant, a voucher! for the amount due under the contract was prepared by the district engineer in charge of the work and forwarded to plaintiff. In this voucher the cost to the plaintiff of the additional articles was not included and there was deducted from the amount otherwise due under the contract the sum of $3,850 liquidated damages, computed on the basis of 154 days’ delay in delivery, at $25 per day. The plaintiff protested this settlement and immediately presented a claim to ¡the defendant for an additional amount of $6,018.20, which included $3,750 of the amount withheld as liquidated damages, together with $2,268.20, the cost plus 10%, of the additional articles delivered under protest. The claim was considered by the contracting officer in charge of the work and forwarded to the Chief of Engineers, U. S. Army, Washington, D. C., with the recommendation that the claim for $2,268.20 for electrical wiring and supplies be disallowed and that the liquidated damages assessed and withheld be remitted to the extent of $3,575.00. The claim was then forwarded by the Chief of Engineers to the General Accounting Office for settlement with the recommendation that it be allowed in full.
The Comptroller General upon the final adjustment of the claim allowed it to the extent of $3,575 of the amount *344 of liquidated damages retained, and disallowed it as to the balance.
Two questions are presented: (1) The plaintiff’s right to recover the cost of the additional articles furnished under protest, plus 10%, and, (2) its right to recover $275 withheld as liquidated damages because of 11 days’ delay in furnishing the patterns.
Paragraph 2 of the specifications, under “Work to be done”, consists of two subdivisions — proposal A, and proposal B. Proposal A calls for furnishing, delivering, and installing. Proposal B calls for furnishing and delivering only, the material mentioned in proposal A. The plaintiff’s bid was for furnishing and delivering only, and the materials to be furnished were specifically enumerated. The bid was accepted as made and was incorporated in the contract without change. It is conceded that the plaintiff furnished and delivered all the articles and materials specifically enumerated in the contract but the defendant contends that the electrical wiring and other supplies necessary to the installation of the gate-operating machinery and valve-operating machinery were within the terms of the specifications and drawings and that the plaintiff was contractually obligated to furnish them as a part of the contract consideration. Paragraphs 2, 9, 39, 47 of the specifications and sheet no. 11 of the drawings are relied upon, as supporting defendant’s contention.
Paragraph 2 of the specifications, after stating that work under the specifications will consist of furnishing gate- and valve-operating machinery, continues: “including motors, switchboards, controls, wiring, handrails, motor and machine covers, recess covers, gratings, etc., and delivering and installing it * * *, or furnishing and delivering it at the site only.” It is urged that the word wiring as used in the specifications refers to and covers wiring and other electrical apparatus necessary to the installation and proper working of the gate-operating and valve-operating machinery described therein. We do not think the word wirmg as used in this specification is susceptible of the construction defendant places upon it, but that it has reference *345 only to the necessary and proper wiring of the motors, switchboards, controls, and other articles enumerated, all of which involved the use of electrical wire and wiring in their manufacture. All of these articles were properly wired at the factory before shipment and when received by the defendant were ready for installation and for the necessary electrical connections required in their operation. We think the requirement of paragraph 2 of the specifications in reference to wiring was met when the plaintiff delivered the articles enumerated in the contract properly wired and ready for installation.
Paragraph 9 merely provides that the work shall conform to the drawings, sheets 1 to 11, inclusive. This specification has no bearing whatever on the question at issue except insofar as the drawings show or fail to show the additional articles the plaintiff was required to furnish.
Paragraph 39, under the heading “Electrical work — General”, provides that “the contractor shall furnish ail electrical equipment to make a complete and finished job in every respect to operate the gate and valve machinery as herein described and shown on drawings.” The word “contractor” as used in this specification means the installing contractor as clearly appears from the language of paragraphs 37 and 38 preceding. Paragraph 37, under the heading “Shop assembly”, provides that “all units and subunits shall be shop assembled and interchangeability shown in the presence of an inspector. * * * Units and subunits shall, if the contractor is to furnish and deliver only, be delivered assembled, * * * and all parts, of whatever nature, so assembled as to reduce field assembly to a minimum.” Paragraph 38, under the heading “Field assembly cmd installation”, provides that “if the contract provides for installation, the contractor shall assemble and install all work called for and/or indicated to operate valves and gates, and make a complete and finished job.” When paragraphs 37, 38, and 39 are read and construed together, as they must be, the conclusion is obvious that the contractor referred to in paragraph 39 of the specifications is the installing contractor. It was his duty to assemble and install all dec- *346 trical equipment necessary to make “a complete and finished job in every respect, to operate the gate and valve machinery” furnished and delivered by the plaintiff under its contract.
Paragraph 47 of the specifications, under the heading “Wiring”, also clearly has reference to “wire” and “wiring” necessary to the installation of the machinery furnished and delivered by the plaintiff, and its provisions have no relation to plaintiff’s contract obligations.
The electrical equipment and wiring necessary to- the installation of the material and machinery covered in the contract is nowhere shown on the drawings furnished the plaintiff at the time its bid was made, nor is a list of the materials similar to what the plaintiff was required to furnish anywhere set forth or indicated in the specifications. The list of additional materials furnished was made up by the operating head of the electrical company in charge of the work of installation and was arrived at by actual inspection and measurements on the job. This material, being neither enumerated in the contract nor shown in the specifications or in the drawings, both a part of the contract, was outside of and in excess of the plaintiff’s contractual obligations,
Article 15 of the contract provides that all disputes concerning questions of fact arising under the contract “shall be decided by the contracting officer or his duly authorized representative, subject to written appeal by the contractor within thirty days to the head of the department concerned, whose decision shall be final and conclusive * * It is urged that because the plaintiff took no- appeal from the decision of the contracting officer requiring the delivery of the additional material involved, to the head of the department concerned, that such decision is binding and conclusive, in the absence of a showing of fraud or mistake so gross as to imply bad faith, and may not be reviewed by the court.
There is no question that parties to a contract are competent to make a stipulation of this kind and its provisions when made are binding upon them. But the competency of the parties to so stipulate, as the courts have many times pointed out, is limited to the decision of questions of fact arising under the contract, such as the quantity and quality *347 of materials delivered, whether the work performed meets contract requirements, causes of delay in the performance of the work, etc. These are questions of fact, the correct solution of which is usually largely dependent on professional knowledge and skill. They are questions which the parties to a contract may properly submit to the determination of the contracting officer or head of the department, and lawfully agree to be bound by his decision. But the disputed question here — whether the plaintiff under the terms of the contract was required to furnish the materials demanded by the contracting officer — was not one of fact. It was a disputed question of law — the proper construction of the contract — a question the decision of which was outside the jurisdiction of the contracting officer or head of the department, it being the province of the courts to declare the law of the contract.
The defendant further says that plaintiff is precluded from recovery for the additional material furnished by the terms of article 5 of the contract which reads, “Except as otherwise herein provided no charge for any extra work or material will be allowed unless the same has been ordered in writing by the contracting officer and the price stated in such order”, for the reason that the extra materials furnished were not so ordered.
It is true the price of the extra materials furnished was not stated in the written order of the contracting officer, although they were specifically itemized and described in the order, for the manifest reason that the contracting officer under his construction of the contract did not regard them as extras requiring a change order within the meaning of article 3 of the contract. The delivery of the additional materials on the written order of the contracting officer in these circumstances did not come within the terms of article 5 of the contract, and the plaintiff’s right to reimbursement therefor is not precluded by reason of the fact that the price of the materials demanded was not stated in the order.
Paragraph 55 of the specifications, a part of the contract, provides:
Claims cmd prpteéts. — If the contractor considers any work required of him to be outside the requirements of the *348 contract, or considers any record or ruling of the inspectors or contracting officer as unfair, he shall ask for written, instructions or decision immediately and then file a written protest with the contracting officer against the same within 10 days thereafter, or be considered as having accepted the record or ruling. (See articles 3 and 13 of the contract.)
Within 10 days after demand was made upon it to furnish the materials involved, the plaintiff filed a written protest against the demand and persisted in such protest at every stage of the proceedings thereafter, and immediately filed claim for reimbursement after delivery of the material was completed. It is clear that plaintiff at no time accepted the ruling of the contracting officer, and in no way waived its right to claim compensation for the extra material delivered.
.The extra materials involved were furnished on the written order of Capt. H. B. Vaughan, Jr., an officer having the undoubted power and authority to contract on the behalf of the United States, and who, as a matter of fact, had signed the original contract on behalf of the defendant. The defendant accepted the materials so furnished and received the benefit of them. In these circumstances an im* plied contract arose on the part of the United States to pay the plaintiff the cost of the extra materials so furnished, $2,062.00. The implied contract to pay, however, is limited to the actual cost of the materials furnished and cannot be construed to include the additional ten percent claimed by plaintiffs.
The second item of the claim is for recovery of $275 withheld as liquidated damages because of 11 days’ delay in furnishing certain patterns described in the specifications.
The contract provided for the payment of liquidated damages at the rate of $25 for each calendar day of delay by the contractor in furnishing and delivering the material covered in the contract. It is admitted that the patterns were covered in the specifications and that furnishing them was a part of the plaintiff’s contract obligations. It is also admitted that there was a delay of 11 days beyond the time specified for delivery. It is neither alleged nor shown that *349 the defendant was in any way responsible for the delay and therefore the deduction of this amount from the amount otherwise due the plaintiff under the contract was proper and in accordance with the terms of the contract.
COUNTERCLAIM
The defendant has interposed a counterclaim for $3,575, the amount deducted and withheld from the amount due plaintiff under the contract as liquidated damages because of 143 days’ delay by the plaintiff in delivering the additional articles which formed the basis of item 1 of the plaintiff’s claim heretofore considered. This delay of 143 days was in addition to the 11 days’ delay in the delivery of the patterns. Upon the consideration of the plaintiff’s claim for remission of the amount so assessed and deducted, the district engineer in charge of the work who was the authorized representative of the contracting officer, recommended that the amount be remitted, on the ground that the 143 days’ delay in delivering the extra materials was caused by the defendant and not by the plaintiff. This recommendation was concurred in by the Chief of Engineers, and the Comptroller General to whom the claim was referred for settlement allowed the claim and the plaintiff was paid the amount of liquidated damages so assessed and withheld. The defendant in the counterclaim asks for judgment against the plaintiff for the amount thus remitted by the Comptroller General and paid to plaintiff on the ground that the Comptroller General was without authority to remit and pay to plaintiff any part of the liquidated damages assessed and withheld.
The. counterclaim is entirely without merit and is dismissed. A judgment is awarded the plaintiffs in the sum of $2,062.00.
Whaley, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.