Whitaker, Judge,
delivered the opinion of the court:
The plaintiffs jointly entered into a contract with the defendant to construct the superstructure of a number, of buildings known as the Kenfield Housing Project. The basement already had been excavated and the foundation walls had been constructed by another contractor. Plaintiffs allege they were required to do work not required by the contract and that they have not been paid therefor. For this alleged extra work they sue.
I
The first extra is for alleged additional excavation and additional concrete in constructing the front foundation walls of the back and rear entrances to the buildings. Plaintiffs claim they were required to excavate to a greater depth than that called for by the contract and specifications, and that this necessitated additional concrete.
The architectural drawings required that the front foundation walls of these entrances should extend to a minimum depth of 4 feet below finished grade and to at least 6 inches below the present or original grade. The structural drawings required that these walls be carried down to solid bearing. Plaintiffs originally contended that their contract required them to go no deeper than the depths fixed in the architectural drawings, to wit, 4 feet below finished grade, and not less than 6 inches below present or original grade, and that if it was necessary to go deeper in order to reach solid bearing, additional compensation therefor would be paid. However, they now have abandoned this position and admit they were required by the contract to go to solid bearing. This is obviously correct.
Their present contention is that they were required by defendant’s representative to go not only to solid bearing but below it. There is some conflict in the proof on this point. Defendant’s project engineer testified definitely they were not required to go below solid bearing. A Mr. Knight, employed at the time of giving his testimony as a construe *154 tion superintendent by John McShain, Inc., but employed on this project in a similar capacity by the plaintiffs, testified that, except in the case of three or four buildings, solid bearing was reached at six or twelve inches below present grade, and in many cases long before they reached the four-foot minimum. (Plaintiffs claim the defendant required them tó go to depths below the four-foot minimum varying from 0.26 feet to 4.81 feet.) Mr. Helsing, who was the president of the Easthom-Melvin Company, the subcontractor doing the.concrete work, testified that, except in the case of from four to six buildings, solid bearing, in his opinion, was reached before the four-foot minimum depth was reached. Mr. Helsing, however, says:
I would say, in most of these cases, that the solid bearing was at the four'-foot minimum, but he [the inspector] was naturally going to be sure of himself, and very naturally carried the thing down to a point where he was positive that there was solid ground. As I see it, it is a matter of interpretation of what is solid ground, where the solid ground is and in some of these cases we could have filled a lot and been on solid ground, but in the inspector’s interpretation it would not have been on solid ground, and he thought the drawings could have made it go down any depth, due to this minimum requirement of solid bearing. He contended throughout that he could require it to be carried to any depth which,in his opinion, would be solid ground.
He sums the case up by saying that it was a matter of a difference of opinion between the plaintiffs and the inspector as to what was solid ground.
Both he and Taylor, plaintiffs’ chief architectural engineer on the job, say that the contractor who had excavated the basement and built the foundation walls had excavated so far beyond the foundation walls that the front foundation walls of the entrances would have been deprived of lateral support if they were carried only to the four-foot minimum, and that this made it necessary to go down to a greater depth ■in order to reach a bearing that was solid underneath and had solid lateral support.
Whatever the reason necessitating excavation below the four-foot minimum, or whether or not it was necessary to do *155 so, all parties agree that the excavation was carried no further than was necessary, in the opinion of the defendant’s engineer, to reach solid ground. The only difference between them is whether or not as a matter of fact they were carried below solid ground. It is unnecessary, however, for us to determine this fact, because the contract commits the settlement of such disputes to the contracting officer. Article 15. of the contract provides:
* * * Except as otherwise specifically provided in this contract, all other disputes concerning questions arising under this contract shall be decided by the Contracting Officer, or his duly authorized representative, subject to written appeal by the Contractor within 80 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto as to such questions. * * *
Plaintiffs agree that what is solid bearing is a matter of opinion. They concede that two men might honestly disagree about this. 'They did disagree in this case and that disagreement has been settled adversely to the plaintiffs by the party to whom the contract commits the settlement of such disputes. John McShain, Inc., v. United States, 808 U. S. 512, 513, and cases there cited. There can be no doubt that the settlement of questions of this sort was within the province of the contracting officer or his duly authorized representative. He was on the ground and saw the actual conditions and ivas in much better position to determine what was solid bearing than anyone not on the ground. The parties plainly intended to leave to him the settlement of such disputes.
Even though the extra depth was necessitated by the work of the foundation contractor, plaintiffs are not entitled to recover of the defendant, because, among other reasons, paragraph 5 of section 8 of the “Special Conditions” of the specifications required the contractors to examine the work already performed on the site and to notify the contracting officer if they thought there was any discrepancy between the work actually done and that called for under the foundation contract. This section provided that—
*156 * * * Failure of the Contractor to notify the Contracting Officer within fifteen (15) days after turning over the project site or any section thereof to the Contractor that the foundation work done under the Foundation Contract is not in accordance with the Foundation Contract will be deemed conclusive evidence that the work called for under the Foundation Contract has been performed in accordance with that contract. * * *
II
Plaintiffs’ next claim is that certain waterproofing which they were required to do was an extra.
As stated, a previous contractor had constructed the foundation walls of the buildings, but the plaintiffs were required to install a concrete slab on the floor of the basement which connected with the foundation walls. Water seeped in between the foundation walls and the basement floor slab, and the Project Engineer, under date of March 13, 1937, demanded of plaintiffs that this situation be corrected. The plaintiffs took the matter up with their subcontractor, who insisted that this waterproofing was not a part of its contract. The plaintiffs then, on March 26, 1937, wrote the Project Engineer protesting against being required to do this work. The Project Engineer, however, continued to insist that this was a part of plaintiffs’ contract, even to the point of saying to plaintiffs in his letter of March 27, 1937:
* * * The work in its present state is unsatisfactory and not acceptable to this office, and until these cellars are waterproofed, a 100% payment on account of concrete work cannot be made.
Still the plaintiffs protested against being required to do the work, notwithstanding further demands on them by the Project Engineer, made on April 14 and April 23,1937.
However, on July 1, 1937, the plaintiffs did comply with the demands of the Project Engineer and began undertaking to waterproof these joints, continuing the work until August 20,1937, when they refused to go any further, notwithstanding the insistence of the Project Engineer that further work be done. Finally, on October 27, 1937, plaintiffs wrote the contracting officer notifying him of the demands of the *157 Project Engineer and that they had been compelled to do> some work along this line, but under protest, and notifying; him that they intended to file claim for the work already done and asking for his ruling as to whether or not they would be required to do additional work. Their claim for the work already done was filed two days later. After further correspondence with plaintiffs, the defendant paid plaintiffs the full contract price for their work, without any deduction for completing the waterproofing, but it did not pay them for the waterproofing thát already had been done.
On appeal the head of the department disallowed plaintiffs’ claim for the waterproofing done.
In this court the defendant makes no claim that this waterproofing was required by the contract, but defends solely upon the ground that plaintiffs did not protest against being required to do this work, as was required by the contract. Paragraph 2 of section 10 of the “General Conditions” of the specifications provides:
No complaint on the part of the Contractor that work demanded of him is outside the requirements of the Contract Documents, or that any record or ruling of the Contracting Officer is unfair, shall be considered or entertained unless a protest is submitted in writing to the Contracting Officer within ten days after receipt of demands for such work or of such record or ruling stating clearly the basis of the Contractor’s objections. Unless the Contractor files such protest as above provided, he will be deemed to have accepted, and shall be conclusively bound by, such demand, record, or ruling.
We think plaintiffs’ claim is not barred by this provision of the specifications. It is true they did not protest against doing this additional work until thirteen days after demand had been made upon them, but they did not proceed to do the work in the meantime and did not enter upon it until after they had continued to protest over a period of three and a half months. The quoted provision of the specifications has application, we think, only to a case where plaintiff accedes to the demand made upon him and enters upon the work without protest at the time. In such case he must protest in ten days thereafter; but where he protests before *158 he enters upon the work, even though after the expiration of ten days after the demand was made upon him, section 10 raises no bar to recovery.
This plainly is the intent of the specifications, as is indicated by the last sentence thereof, which reads:
Unless the Contractor files such protest as above provided, he will be deemed to have accepted, and shall be conclusively bound by, such demand, record, or ruling.
If the contractor protests before doing the work and continues to do so, of course he cannot be deemed to have accepted the ruling. The record is clear that the plaintiffs always protested against being required to do this work, both before they did any of it and after some of it had been done and further demands were made upon them. None of their acts indicated that they accepted the ruling. The defendant knew that they did not and, therefore, they ought to recover if the work was indeed woi’k in addition to that required by the contract. The defendant does not deny that it was additional work.
Article 5 of the contract providing for extras has no application to a case where the contracting officer insists that the work is required by the contract and specifications. It would be idle for the contractor to demand a written order from the contracting officer for an extra when the contracting officer was insisting that the work required was not additional Avork. Insisting that it was required by the contract, of course the contracting officer would not give an order as for an extra. In such case plaintiffs are not bound to comply with the provisions of article 5 in order to entitle them to recover for extra work demanded of them. Davis v. United States, 82 C. Cls. 334, 342-347.
The defendant insists that the plaintiffs’ work was faulty and, therefore, that they are not entitled to recover the sum claimed. There is no proof that it was faulty other than that the defendant’s project engineer tore out some of it and used a composition different from that used by plaintiffs. The proof shows that plaintiffs’ method would have required adding coats of cement where leaks recurred until the leaks were finally stopped. Plaintiffs did not *159 continue this program because of their insistence that no part of the work should have been required of them. There is no proof to show that the leaks finally would not have been stopped if plaintiffs’ program of continuing to add coats of cement where leaks recurred had been followed. That defendant’s project engineer chose to adopt a different method is not sufficient proof that the method adopted by plaintiffs would not have done the work satisfactorily.
We are of opinion that the plaintiffs are entitled to recover the amount claimed for the waterproofing performed by them. Judgment will be rendered against the defendant and in favor of the plaintiffs for the sum of $8,131.73. It is so ordered.
Madden, Judge; Jones, Judge; Littleton, Judge; and Whalev, OMef Justice, concur.