## UNITED STATES v. JOHNSON.
### No. 11026.

Circuit Court of Appeals, Ninth Circuit.

Feb. 15, 1946.

Rehearing Denied April 16, 1946.

Carl C. Donaugh, U. S. Atty., and J. Robert Patterson, Asst. U. S. Atty., both of Portland, Or., for appellant.

John Lichty, of Portland, Or., for appellee.

Before GARRECHT, DENMAN, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellee, plaintiff below, was awarded damages growing out of a contract with the United States for the construction of some 16 miles of highway.

The facts are these. In April 1937, the United States called for bids for the construction of the highway and furnished plans and specifications upon which bids might be based. Paragraph 2.2 of the specifications was as follows: "Sources of Supply. Gravel for crushing is available approximately 0.5 mile right of Station 870 and rock for crushing is available approximately 0.3 mile right of station 1239. Unless otherwise specifically approved in writing by the engineer only materials from the above sources shall be used for crushing. Additional filler that may be necessary to meet the required grading shall be obtained from sources approved in writing by the engineer." On receipt of the specifications appellee examined the surface of the site of the projected rock quarry. His bid, later submitted, was accepted and a written contract was entered into for the doing of the work.

Upon coyoting the quarry in preparation for shooting it appellee discovered that there was soft rock beneath the surface. He notified the resident engineer of the difficulty, and after further investigation by the government it was decided to proceed, making the best of what was there. The quarry was shot and a dragline to the rock crusher installed. In passing through the crusher the soft rock tended to adhere to the rolls with the result that the roll shaft was thrown out of line and eventually broken. This occurred several times, each occurrence being followed by a shutdown for three or four days. There was evidence that the government inspectors who checked the loads of material as they were carried out would hold up the trucks or order the material dumped on occasion because of the presence of the soft material. The diary of the resident engineer bears witness to the delays encountered both from the breaking of shafts and the presence of poor rock. Finally a new quarry was opened some distance from the first, but this proving unsatisfactory appellee moved to the gravel pit located near Station 870 at the opposite end of the road. These operations resulted in further loss of time and an increase in appellee's costs. He was unable to complete the road before bad weather forced cessation of operations

for the winter, and when work was resumed the following summer it was necessary to reshape the roadways and gutters for the second time—an expense that would have been avoided save for the delays of the previous year. For appellee's failure to complete the contract on time the sum of $1,575 as liquidated damages was assessed against him.

The theory of the suit is that Specification 2.2 constituted a representation or warranty that satisfactory materials could be produced from the designated quarry for all the work required under the contract, and that the shortcomings of the quarry both as respects quality and quantity of materials amounted to a breach of the warranty. Damages were sought for the increased costs growing out of the breach, these added costs being for the change in location, for opening a new quarry, for longer hauls, costs growing out of shutdowns and delays, from repairs to machinery, for expense of shipment of machinery because of the winter cessation, and for the liquidated damages assessed by the government. The damages alleged in the amended complaint aggregated in excess of $14,000, but the prayer asked for judgment for $10,000. Judgment was granted in the latter amount less one cent.

■■■■ 1. Jurisdiction of the district court was predicated on the Tucker Act, 28 U.S. C.A. § 41(20).[1] It is argued by the United States that the court erred in retaining jurisdiction after the complaint was amended in the course of the trial to present claims exceeding $10,000. Counsel for the government concede that where there is a single claim to damage the excess above $10,000 may be waived, in which event the district court retains jurisdiction, cf. Hill v. United States, C.C., 40 F. 441; W. E. Hedger Co. v. United States, D.C., 42 F.2d 553; Hammond-Knowlton v. United States, 2 Cir., 121 F.2d 192; Oliver v. United States 9 Cir., 149 F.2d 727. The argument assumes that several different claims were asserted by appellee. We think the assumption is incorrect. While the damage sought was a composite of several items, there was but one claim or cause of action, namely, a claim for damages arising out of

the alleged breach of warranty. Several of the cases cited above, notably the leading case of Hill v. United States, supra, support the view that the aggregate excess of the items over $10,000 may be waived. No authority to the contrary is cited.

■■■ 2. It is argued that Paragraph 2.2, taken as a whole, was not a deceptive representation or warranty upon which appellee was entitled to rely as an assurance that there was an adequate supply of suitable rock at the source designated. Attention is called to a general provision contained in the specifications to the effect that "bidders must make their own estimates of the facilities and difficulties attending the execution of the proposed contract, including local conditions, uncertainty of weather, and all other contingencies". The cases of MacArthur Brothers Co. v. United States, 258 U. S. 6, 42 S.Ct. 225, 66 L.Ed. 433, and Simpson v. United States, 172 U.S. 372, 19 S.Ct. 222, 43 L.Ed. 482, are relied on as presenting analogous situations.

The contracts before the Court in those cases are readily distinguishable. More nearly akin to the present are those involved in Sheridan-Kirk Contract Co. v. United States, 53 Ct.Cl. 82, Hollerbach v. United States, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898, and Christie v. United States, 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933.[2] In the Sheridan-Kirk case the government was held liable for misrepresentations honestly made as to the depth of bedrock. The doctrine there announced was approved by the Supreme Court in the Hollerbach and Christie cases. In the Hollerbach decision it was held that a positive statement in the contract for repair of a dam to the effect that the dam was backed up with broken stone, sawdust and sediment to a designated height must be taken as true, and that upon the government rather than upon the contractor must fall the loss resulting from the mistaken representations; and this despite the contractual requirement that the contractor make an independent investigation of the facts. The Court said that [233 U.S. 165, 34 S.Ct. 556] "it would be going quite too far to interpret the general language of the other paragraphs as requiring independent investigation of facts which the specifications fur-

---

[1] The Act confers jurisdiction concurrent with the Court of Claims, "of all claims not exceeding $10,000 founded upon * * * any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort * * *."

[2] Cf., also, United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166.

nished by the government as a basis of the contract left in no doubt."

Here there was a deceptive representation that rock suitable for crushing was "available" at a given point, and the contractor was in so many words notified to look there for his source of supply. The inescapable assumption was that the material was adequate as well as suitable. The contractor, in estimating costs, was entitled to figure his bid on that assumption. The phrase "unless otherwise specifically approved in writing by the engineer, only material from the above source shall be used for crushing" warned the bidder that he was not to look elsewhere in figuring costs of materials; and that if he did so he ran the risk of having such materials disapproved by the engineer. We do not believe that the final sentence of the specification put a different face on the matter. Requirements of fair dealing underlie government as well as private contracts. Hollerbach v. United States, supra, 233 U.S. at page 171, 34 S.Ct. 553, 58 L.Ed. 898; Ripley v. United States, 223 U.S. 695, 750, 32 S.Ct. 352, 56 L.Ed. 614; United States v. L. P. & J. A. Smith, 256 U.S. 11, 16, 41 S.Ct. 413, 65 L.Ed. 808.

■ 3. Article 15 of the contract states, in part: "Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative. * * *" It is claimed that the court erred in denying the motion of the government for a directed verdict because of appellee's failure to pursue the procedure prescribed by this Article, that is, to appeal to the head of the department.

Preliminarily it is to be noted that the situation is not necessarily governed by the recent decision in United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039, on which the United States heavily leans. The contract provision (Article 15) involved in that case required that all disputes "concerning questions arising under this contract" be decided by the contracting officer, subject to appeal by the contractor. Here the pertinent article relates only to disputes "concerning questions of fact."

In Callahan Construction Co. v. United States, 91 Ct.Cl. 538, 616, the court said:

"The rule is well established by the decided cases that in contracts of this character where, as in art. 15 above-mentioned relating to disputes, it is provided that the decision of the contracting officer and the head of the department shall be final and conclusive only as to questions of fact, a decision or ruling on a protest or appeal which involves or is based upon an interpretation and construction of a contract and the specifications is a decision on a question of law rather than the determination of a fact and does not preclude the consideration, decision, and determination by the court of the question in controversy, including the facts. Rust Engineering Co. v. United States, 86 Ct.Cl. 461, 473. In Davis et al. v. United States, 82 Ct.Cl. 334, this court held that the competency of the parties to a Government contract to stipulate that the decision of disputed questions by the contracting officer of the Government, or by the head of the department on appeal, shall be final and conclusive is limited to questions of fact and, therefore, does not include questions involving construction of the contract which are questions of law." Several other decisions of the Court of Claims to the same effect are cited in the opinion.

In the very recent case of Silas Mason Co. v. United States, 62 F.Supp. 432, at page 445, the same court said: "We recognize that there may be disputes to which, by fair construction of Article 15, it is not intended to apply. For example in the form in which Article 15 is frequently written, it applies only to disputes concerning 'questions of fact'. When so written, it would not, of course, bind the contractor to resort to, nor the Government to accord, administrative determination of disputes concerning questions of law. But Article 15 as written in the plaintiffs' contract applied, except as to labor issues, not here involved, to 'all * * * disputes concerning questions arising under this contract'. We think, therefore, that the plaintiffs were required to submit all the disputes upon which this suit is based, to the stipulated administrative procedure."

These holdings, so far as we are advised, have not been disturbed by the Supreme Court. We take them to be authoritative. It follows that if the question decided by the contracting officer (here the district engineer) concerned a disputed question of law, namely, whether or not Paragraph 2.2 of the specification was a binding repre-

sentation or warranty, then the officer would have no authority to hear or decide the dispute, and the contractor's failure to prosecute an appeal would be no bar to a court action.

To obtain a reversal appellant must affirmatively establish error. The burden is upon it to show that the question decided by the district engineer was within that officer's competence, that is to say, that the decision was of fact rather than of law, hence an appeal should have been taken to the head of the department.

The record before us does not disclose what the district engineer decided in denying the claim submitted by appellee. His decision was embodied in a letter, but the letter was not offered or introduced at the trial. In the absence of a showing as to what the officer decided, we are obliged to assume, in support of the judgment, that his decision was one of law, namely, that Specification 2.2 was not a binding representation or warranty—hence that the contractor had no ground to complain because compelled to seek the rock elsewhere.

We need not and do not rely wholly upon that presumption. The crucial issue on the merits, argued pro and con by the parties here, is whether the pertinent specification was or was not a binding representation or warranty. It is a fair assumption that such was the nature of the dispute waged before the district engineer, and that the latter accepted and applied the government's interpretation of the specification.

4. The government questions the sufficiency of the evidence to support the damages awarded. However, a study of the record in this respect shows that it amply sustains the findings and award.

Affirmed.