The **UNITED STATES** of America for the use of **THE ARDMORE CONCRETE MATERIAL COMPANY, Inc.,** a corporation, Appellant,

v.

**H. D. WILLIAMS** and **W. W. Collins,** d/b/a Saxet Foundation Company; T. C. Bateson Construction Company, a corporation; The National Surety Corporation; and Fidelity and Casualty Company of New York, a corporation, Appellees.

**No. 5402.**

United States Court of Appeals
Tenth Circuit.

Jan. 2, 1957.

Rehearing Denied Feb. 15, 1957.

Looney, Watts, Looney, Hamill & Nichols and W. R. Wallace, Jr., Oklahoma City, Okl., for appellant.

Byron Poulis, New York City, Julian B. Fite, Muskogee, Okl., and Brundidge, Fountain, Elliott & Bateman, Dallas, Tex., for appellees.

Before PHILLIPS, MURRAH and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

The plaintiff-appellant, Ardmore Concrete Company, Inc. brought suit under the Miller Act, §§ 1–4, 40 U.S.C.A. §§ 270a–270d against the defendants-appellees, claiming $5,867.11 for ready-mixed concrete delivered but not paid for on a government construction project. T. C. Bateson Construction Company is the prime contractor and The National Surety Corporation is surety on its payment bond; Saxet Foundation Company is the subcontractor and its surety is Fidelity & Casualty Company of New York. Since the subcontractor has not cross-appealed upon its counterclaim filed in the District Court, the issues are reduced to the question of whether the defendants are liable under their contracts and bonds for material furnished and used in the public work.

The prime contractor, Bateson, entered into a contract with the United States for the construction of "A/C Maintenance Hangar and Supporting Facilities, Ardmore Air Force Base, Ardmore, Oklahoma, Contract DA–41–443–ENG–4076." Specifications for the work required a number of caissons to be placed under the foundation of the hangar; holes of 24 to 48 inches in diameter and 50 to 60 feet deep were to be bored and filled with reinforced concrete. The quality of concrete to be used as set forth in the trial court's findings is as follows:

(a) "1A–6. Concrete." That strength requirements, materials, reinforcement,  mixing and placing concrete, shall conform to Section 2 Concrete of the Specifications for 3,000 pounds per square inch concrete; and providing for a method of depositing the concrete in the caissons.

(b) "2–11. Classes of Concrete and Usage." A minimum allowable compressive strength at 28 days, on test, of 3,000 pounds per square inch for Class A concrete and a classification of the concrete involved herein as Class A concrete.

(c) "2–12. Proportioning of Concrete Mixes" and average cement content for Class A concrete of 5½ bags of cement per cubic yard of concrete.

(d) "2–28. Payment." A provision for adjustment in payment at contract unit price-bid for cement more or less than the average bags per cubic yard specified for a given mix.

A further provision allowed for adjustment for variation from the specified average cement content of 5½ bags per cubic yard of concrete, permitting payment to the contractor if a greater amount was needed and a credit to the government for lower cement content of concrete.

The work was to be subject to inspection, examination, test and approval or rejection by the contracting U. S. officer and it was the duty of the contractor to immediately replace or correct rejected material and defective workmanship. In case of a dispute, the contractor might make a claim to the contracting officer and his decision in the matter is final unless set aside by higher authority on appeal.

Pursuant to this contract Bateson entered into a subcontract with Saxet, also made a defendant in this action. The subcontractor agreed to furnish all material and labor for the caisson foundation in strict accordance with the conditions, plans and specifications prepared by the Corps of Engineers, U. S. Army, which were made a part of the subcontract; and further to perform to the entire satisfaction of the Corps of Engineers.

In accordance with this subcontract, Saxet entered into a purchase order agreement with the plaintiff for approximately 2,000 cubic yards of ready-mixed concrete, having a cement content of 5½ sacks per cubic yard. Provisions that the concrete be in strict accordance with the specifications of the Corps of Engineers and that all materials be subject to approval of the Corps of Engineers were incorporated in this agreement.

The plaintiff furnished ready-mixed concrete for the project in accordance with a mix design furnished by the Corps of Engineers which called for only five bags of cement per cubic yard of concrete. Samples were taken and tested by the Corps of Engineers and many of them failed to meet the strength requirements of the specifications. The concrete in the caissons was tested and the Corps of Engineers rejected the concrete in fourteen of the forty-five caissons and questioned the quality of that in sixteen others. The Corps of Engineers likewise refused payment on the rejected concrete and an appeal was taken from this decision and is now pending before the Chief of Engineers.

After the concrete was rejected, a conference was held among the parties and the Corps of Engineers and the mix design was changed to 5½ bags of cement per cubic yard upon the request of the plaintiff. None of this mix has been rejected.

The subcontractor, Saxet, refused to pay the plaintiff for the concrete used in the replacement work and plaintiff brought suit, claiming a balance due of $5,867.11. There is no question as to the amount due if Saxet is liable to Ardmore under these circumstances. The trial court found that both Ardmore and Saxet were following instructions by the officer in charge authorizing that change in the specifications from the five and one-half sack to five-sack mix.

The good faith of the government engineer in rejecting the first concrete poured is not in dispute. Admittedly, the material failed to meet the compressive strength demanded for this particular work by the specifications. The only issue is whether the contractor's bond is liable for extra expense incurred by a materialman as a result of following the instructions of the contracting U. S. officer. The issue thus presented is one of law, rather than one of fact entrusted by the contract to the decision of the contracting officer. United States v. Johnson, 9 Cir., 153 F.2d 846.

In making its conclusions, the trail court stated "3 * * * Neither Ardmore nor Saxet were at liberty to disregard the written instructions of the official in charge of the work at the Ardmore Air Base regarding the change in the concrete mix. The loss which Saxet seeks to recover was not occasioned by any wrongful act of Ardmore. This loss, in my judgment, should be ultimately borne by the United States, but legally this Court is not able to render such a judgment * * *" Since the appellant, Ardmore, had no direct contractual relationship with the United States, we agree with the trial court's dual conclusion that the ultimate loss should be in good conscience borne by, but cannot in this action be shifted to, the United States. The rule would be otherwise if Ardmore had contracted directly with the United States, and it is well-settled law that the government must respond in damages where it has thus misled one of its contractors. United States v. Atlantic Dredging Co., 253 U.S. 1, 40 S.Ct. 423, 64 L.Ed. 735; Hollerbach v. U. S., 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898; Railroad Waterproofing Corp. v. The United States, (C.Cl.) 137 F.Supp. 713; United States v. Johnson, supra.

But the purchase order agreement with Saxet provided that the ready-mixed concrete which it was to supply should be in accordance with the specifications prepared by the Corps of Engineers and subject to the approval of that governmental agency. The specifications permitted a variation in cement content; if the mix design provided by the engineer had been successful in meeting the required compressive strength, the benefit of savings on cement cost would have been credited to the government.

Appellee argues that since the specifications required a compressive strength for concrete of 3,000 p. s. i. and parts of the first mix failed to meet the test, Ardmore did not meet the terms of the contract. This argument would have been valid had Ardmore been left unhampered in its efforts to produce the proper mix. However, as in the case of Dow v. Unit-

ed States for Use and Benefit of Holley, 10 Cir., 154 F.2d 707, Ardmore was wrongly directed by one who held the power to give such instructions and enforce them. When a contract, as here, provides for certain productive results and also provides that the method of obtaining these results shall be unqualifiably subject to the direction of a third party who stands to gain monetary benefits by the method dictated, no breach of contract is occasioned by a failure of result which is attributable entirely to faulty directions. See United States v. Atlantic Dredging Company, supra.

Laborers and materialmen do not have enforceable rights against the United States for their compensation, and cannot acquire a lien on public buildings, but 40 U.S.C.A. §§ 270a–270d require that a surety guarantee payment for materials and services used in construction. United States v. Munsey Trust Co. of Washington, D. C., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022.

■ The bonds here involved are conditioned for payment of all labor and materials used in the construction of the Ardmore Air Base. If the rejected concrete, although not presently a part of the construction nor originally included in the contract, was required of Ardmore for the construction, the contractor and his surety are liable for payment upon it. United States for Use and Benefit of W. A. Rushlight Co. v. Davidson, D.C. Idaho, 71 F.Supp. 401; United States for Use of Baltimore Cooperage Co. v. McCay, D.C.Md., 28 F.2d 777; United States ex rel. Johnson v. Morley Const. Co., 2 Cir., 98 F.2d 781.

In the case of John A. Johnson & Sons v. United States, for Use of Baltimore Brick Co., 4 Cir., 153 F.2d 534, recovery was allowed the materialman against the contractor and his surety for extra bricks required to replace bricks wrongfully condemned by the project engineer. Although, as pointed out by the appellee, there was no wrongful condemnation of the concrete by the engineer in the present case, the distinction is untenable because the mistaken judgment of the engineer and his subsequent reversal caused the loss regardless of the fact that his second instruction corrected the first.

The judgment is reversed with directions to enter judgment in favor of appellant and against appellees for the sum of $5,867.11.