## No. 18,607.

ACE FLYING SERVICE, INC. *v.* COLORADO DEPARTMENT
OF AGRICULTURE, ET AL.

(348 P. [2d] 962)

Decided January 25, 1960.    Rehearing denied February 16, 1960.

Mr. VINCENT CRISTIANO, Mr. ROBERT BUGDANOWITZ, Mr.
CHARLES F. KEEN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. SAMUEL R. FREEMAN, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

THE parties are here in the same order in which they appeared in the trial court and we will so refer to them.

This is the second time this action has been considered by this court. In a former opinion (*Ace Flying Service v. Colorado Department of Agriculture,* 136 Colo. 19, 314 P. (2d) 278,) it was held that the defendants could not rely on the doctrine of sovereign immunity. Following remand in that case the plaintiff filed an amended complaint in which it sought recovery of damages for an alleged breach of the contract entered into by the parties for the spraying of insect infested lands pursuant to prior legislative authorization. The contract was terminated by the defendants after approximately one-fifth of the contemplated acreage set forth in the contract had been sprayed.

Defendants moved to dismiss the amended complaint on the ground that it did not state a claim upon which relief could be granted. This motion was sustained by the trial court and the plaintiff is here by writ of error seeking reversal.

Exhibit "A," a copy of the contract between the parties, is incorporated in the amended complaint. It consists of the "Invitation to Bid" and the "Bid." It is alleged that on May 25, 1954, defendant Swisher as agent of the Department of Agriculture, entered into the contract with plaintiff under which plaintiff was obligated to spray an *estimated* 1,000,000 acres of rangeland for the price of 13¾ cents per acre; that for the purpose of carrying out its obligation under the contract the plaintiff

borrowed "large sums of money, incurred total preparatory expenditures amounting to $32,532.18 in order to prepare itself to perform the necessary spraying of an estimated 1,000,000 acres and furnished the necessary aircraft, personnel and material to fully perform." It was further alleged that plaintiff actually sprayed 243,792 acres, but was prevented from completing the spraying of the estimated 1,000,000 acres by defendants, who failed and refused to provide the balance of the acreage; that plaintiff received from the Department the sum of $32,518.65 for the acreage sprayed, plus the sum of $1,500, and that by reason of such termination suffered damage in the sum of $24,653.03 as preparatory expense on the unsprayed acreage, together with $16,-939.51 representing net loss of profit on the acreage not made available by defendants.

The contract inter alia provides: (Sec. IV I) "It is mutually agreed and understood that: 1. The State and its cooperators may terminate this contract at any time subject only to the service guarantee herein specified (Sec. IV, paragraph 19)." This last mentioned paragraph reads as follows: "When one or more spraying aircraft are requested by the State and its cooperators and such aircraft are on the airstrips and ready for immediate operation, and no spraying is done during a day due to weather conditions, status of insect development, or other extraordinary or unforseeable conditions, the contractor shall be entitled to and shall receive as rent, for each aircraft meeting the requirements set out in this instrument, thirty-five dollars ($35.00) per day for each single-engine aircraft and one hundred dollars ($100.00) per day for each multi-engine aircraft. The total of such rent paid by the State and its cooperators during the life of the contract shall not exceed five hundred twenty-five dollars ($525.00) for each single-engine aircraft, nor fifteen hundred dollars ($1500) for each multi-engine aircraft.

"Any amounts earned by the contractor as a result of

acres sprayed in compliance with this contract shall be used first to reduce or reimburse the rent amounts due or previously paid under this contract. Payment will be made for acreages sprayed only to the extent that the amount earned therefor exceeds any rent paid or due under this provision."

Counsel for plaintiff in their brief state: "Though we have searched extensively, we have been unable to find any case which bears any resemblance to the facts involved in this case." They concede that a contract may provide that it shall come to an end at the option of one or either of the parties and such stipulation when fairly entered into will be enforced if not contrary to equity and good conscience. Citing 17 C.J.S. Sec. 399. They contend that the termination provision can be construed to have been "fairly entered" and "not contrary to equity and good conscience" *only* if the right to terminate was conditioned upon the happening of a designated event, and that the plaintiff can recover for losses incurred by reason of being "allowed to spray only approximately one-fifth of the contemplated acreage." They argue that the right of defendants to terminate the contract was conditioned upon "weather conditions, status of insect development, or other extraordinary or unforseeable conditions" as provided in paragraph IV-19 of the contract.

We cannot agree with counsel's contention. The termination of the contract gives the defendants the right to terminate the contract "at any time subject *only* to the service guarantee herein specified." This clause we take to mean subject only to such aircraft rentals as have accrued and remain unpaid at the time of termination.

Paragraph IV-19 bears no relation to the termination clause, and does not modify that provision other than to assure that accrued plane rentals will be recognized upon termination.

Considering the situation in the light most favor-

able to plaintiff, we may assume that all five planes operated by plaintiff were multi-engine craft and that under paragraph IV-19 it was entitled to maximum rentals. Under this hypothesis plaintiff would be entitled to a maximum of $7,500. The contract then provides that any amount earned by plaintiff as a result of acres sprayed shall be used first to reduce or reimburse the rental amounts due or previously paid under the contract. Plaintiff admits that it received more than $33,000 for actual work done, which sum is far in excess of the $7,500 maximum *rental* that it could be entitled to under the contract.

It is next urged that the termination clause of the contract is in the nature of a forfeiture which must be strictly construed. We fail to see how the termination here works for a forfeiture. What would be forfeited? Here the privilege of termination was bargained for and agreed upon by the parties and represents a material part of the agreement. See *McCoy v. Pastorius,* 125 Colo. 574, 246 P. (2d) 611; *McDonald Bros. Inc. v. Halston,* 63 N.Y.S. (2d) 909; *Gable v. Frigidaire Corporation* (Tex. Civ. App.), 121 S.W. (2d) 456; *New York Central Emp. v. Commercial Credit Co.,* 178 N.Y.S. (2d) 977.

The obligations of the parties in the event of a termination were clearly stated in the contract. With full knowledge thereof, the plaintiff calculated its costs and was low bidder on the contract. Hence, the price was not dictated by defendants, but was the offer of the plaintiff. It is not unlikely that other bidders took the termination clause into consideration in making their bids, thus making it possible for plaintiff to underbid them and obtain the contract, which was plain in its terms.

In effect plaintiff seeks to be relieved from the consequences of its own improvident or rash act in entering into the contract here considered. Courts will not afford relief based on that ground alone. In *Danks v. McNeil Corporation,* 114 Colo. 578, 168 P. (2d) 256, it was said:

"Hence it is a general rule that if a party enters into a contract or any other legal transaction with sufficient mental capacity to understand it, and not under the influence of fraud, coercion, or imposition, the courts will not relieve him of the consequences of his act on the sole ground that the bargain is, as to him, improvident, rash, foolish, or oppressive."

Perceiving no error in the record, the judgment is affirmed.

Mr. Justice Hall not participating.