J. A. THOMPSON & SON, INC., a California corporation
v. STATE OF HAWAII and HERBERT A. R. AUS-
TIN and R. M. TOWILL, as individuals, associated
and acting as joint contractors and co-adventurers
under the name Austin & Towill.

No. 4787.

FEBRUARY 13, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ.,
AND CIRCUIT JUDGE WONG IN PLACE OF
KOBAYASHI, J., DISQUALIFIED.

530

OPINION OF THE COURT BY ABE, J.

The plaintiff, J. A. Thompson & Son, Inc., a California corporation, was awarded a contract by the State of Hawaii to construct a four-lane divided highway over a portion of Kalanianaole Highway beginning at the Kailua junction and extending towards Waimanalo for a distance of approximately 7,000 feet. The contract price for the job was $564,989.45. Of that sum plaintiff's bid price for the item of excavation was 54.6 cents per cubic yard for 287,000 cubic yards or a total of $156,702.00.

During construction, plaintiff encountered a sub-surface condition of solid rock in the area designated on the State's plans at about Station 49 + 50, where test hole No. 6 had been drilled. Plaintiff contends that the cost of excavation increased from the contract price of 54.6 cents per cubic yard to a unit price in excess of $1.00 per cubic yard because of the condition.

Plaintiff commenced suit against the State to recover this additional cost on the ground that the damages resulted from the State's misrepresentation of material facts or its failure to disclose all material information in its possession. After suit was instituted against the State, the State filed a third-party complaint against Herbert A. R. Austin and R. M. Towill, the engineers responsible for the plan.

After a trial without a jury, the trial court rendered its findings of fact and conclusions of law; judgment was

entered against the plaintiff in accordance therewith; and plaintiff appealed.

The plaintiff states three points upon which it relies on this appeal as follows:

"1. Is the State liable for damages resulting from its misrepresentation of material facts and/or its failure to disclose all material information in its possession where the same is necessary to make other information furnished not misleading?

"2. Do the exculpatory clauses contained in the State's Standard Specifications for Bridge and Roadway Construction (Def. Ex. A) insulate the State against liability for a misrepresentation of material fact or failure to disclose a material information which, if disclosed, would prevent a bidder from being misled?

"3. Is the policy and practice of the State of passing all risks of loss to a contractor-bidder, including the risk of misrepresentation and non-disclosure of material information by the State, consistent with the purposes and intent of § 9-21, Revised Laws of Hawaii 1955, as amended, relating to bidding on public contract?"

Accordingly the basic issue before us is whether the trial court's finding that the State did not misrepresent facts and did not fail to disclose material information is clearly erroneous.

The plaintiff claims that the State misrepresented material facts and failed to disclose all material information in connection with test hole No. 6 drilled at station 49 + 50. The plaintiff contends that this is shown by the following comparison between the log shown on the plans and the actual boring log:

|  | *Actual Boring Log* | *Log as Shown on Plans* |
|---|---|---|
| 0-15 ft. | Hard dry red clay with decomposed lava rock | Red clay with decomposed lava rock |

| | | |
|---|---|---|
| 15-30 ft. | Hard red and yellow gray black clay slightly plastic with decomposed lava rock | Slightly plastic red and yellow gray black clay with decomposed lava rock |
| 30-32 ft. | Brown, yellow slightly plastic damp clay with medium hard decomposed lava rock and little red and black clay | Slightly plastic brown yellow clay with decomposed lava rock and red and black clay |
| 32-40 ft. | Little hard red clay with hard basalt boulders | Red clay with basalt boulders |
| 40-80 ft. | Firm brown clay with hard basalt boulders or cracked basalt strata mixed with very red clay | Brown clay with basalt boulders or cracked basalt strata with red |
| | Cored hole from 40-80′ samples in bags marked Hole No. 6 40-80′ | (No entry at all) |

The plaintiff contends that "It is clear from undisputed testimony at the trial that the State misrepresented because it:

"(a) Neglected to transcribe parts of the driller's boring log regarding Hole No. 6 to the State's plans— it left out such adjectives as 'hard', 'firm', etc., * * * in describing the material encountered by the driller.

"(b) Represented on its plans that the material to be excavated would have shrinkage factor of 23% when in fact the material had a swell factor of 25.4%—a 48.4% difference (Pl. Ex. 5, Tr. 39).

"(c) Failed to disclose in transposing to the plan

information contained on the driller's log that the driller had 'cored hole from 40-80'' (Pl. Exs. 5 and 7).''

The trial court in its findings of fact had found that the discrepancy between the actual driller's boring log and the log as shown on the plans, as contended by the plaintiff, did not constitute misrepresentation of facts or failure to disclose material information on the part of the State.

We believe that any reasonable contractor or engineer should have been aware that he would encounter a subsurface condition of rock from the log on the plans for Hole No. 6 which disclosed the presence of basalt boulders or strata because the word "basalt", commonly called "blue rock", denotes very hard rock and we agree with the trial court that the failure to use the adjectives "hard" and "firm" in connection with basalt boulders or cracked basalt strata did not constitute misrepresentation or a failure to disclose material facts on the part of the State.

The log on the plans showed the presence of "brown clay with basalt boulders or cracked basalt strata with red clay" at the 40-80 foot depth and though the words "cored hole from 40-80 feet" were omitted, plaintiff as a reasonable engineer or contractor should have been aware that samples of basalt boulder or cracked basalt strata could not have been obtained except by coring.[1]

The plaintiff cites *Potashnick* v. *United States,* 105 F. Supp. 837 (1952); *Christie* v. *United States,* 237 U.S. 234 (1915); *United States* v. *Atlantic Dredging Co.,* 253 U.S. 1 (1920); and *Pat G. Murphy, Inc.* v. *Drummond Dolomite, Inc.,* 232 F. Supp. 509 (E.D. Wis. 1964) for the proposition that omission of the adjectives "firm" and

---

[1] Plaintiff in its opening brief acknowledged as follows:
"Where the subsurface material is clay or dirt or rock which is so highly decayed that it is in essence soil, a driller uses a 'push' method whereby a brass tube attached to the end of a tool would be shoved into the ground and pulled up again with the soil sample in the brass tube. The push method cannot be used to recover samples of hard or rocky material . . . and where the driller encounters such material he would change to a 'coring' method of obtaining soil samples."

"hard" and the words "cored from 40-80'" constituted misrepresentation or a failure to disclose material facts on the part of the State.

In *Potashnick,* the government had failed to record on the plans furnished to contractors the information that some borings were discontinued because material encountered was too hard to penetrate with the drilling equipment used in making the borings.

In *Christie,* the government had only shown on the boring sheet record of completed borings indicating gravel, sand and clay, but failed to record data of incompleted boring indicating material to be excavated consisted "largely of stumps below the surface of the earth, buried logs, cemented sand and gravel (none of the sand and gravel being described in the said drawings as cemented) and of sandstone conglomerate."

In *Atlantic Dredging, Inc.,* the government did not show on the maps, results of all the borings. The map showed results of borings only indicating "mainly mud, or mud with an admixture of fine sand" but failed to show the results of other borings, which would have disclosed the fact that material had been encountered of far more difficult character than shown, and would have disclosed the presence of the kind of material, which was actually encountered when work was being done.

In *Murphy, Inc.,* the court held an "owner having superior knowledge of extraordinary subsoil conditions, owes to a bidder the duty of full disclosure of all available information concerning the nature thereof."

The cases cited are not applicable to the facts of this case and they should be distinguished. Here, the State correctly stated on the plans the results of the test boring. All the information in the State's possession was made available to the plaintiff. The State had no superior knowledge of the subsurface conditions, its knowledge or infor-

mation having been derived from the boring of Hole No. 6. The plaintiff in the performance of the contract encountered hard, rocky subsurface condition as the boring had indicated.

Plaintiff also contends that "the State misrepresented on the plans that the excavated material would shrink by 23 percent. In fact, the material swelled by 25.4 percent—this representation involved a 48.4 percent error: an error involving 118,000 cubic yards of excess material."

It is true that there was substantial swelling of the excavated material, instead of shrinkage as contemplated; however, this factor alone does not make the State liable as alleged by the plaintiff. The United States Supreme Court in *MacArthur Bros. Co.* v. *United States,* 258 U.S. 6 (1922), after reviewing *Hollerbach* v. *United States,* 233 U.S. 165 (1914); *Christie* v. *United States,* 237 U.S. 234 (1915); *United States* v. *Atlantic Dredging Co.,* 253 U.S. 1 (1920); and *United States* v. *Smith,* 256 U.S. 11 (1921), said at page 11: "They all declare the principle that the Government will be liable in the same circumstances that private individuals would be liable, but necessarily, neither is liable if neither make representations."

In *Hollerbach* v. *United States,* 233 U.S. 165, 169 (1914), the Supreme Court held that where the government makes " 'a positive and material representation as to a condition presumably within the knowledge of the Government, and upon which . . . the plaintiffs had a right to rely' " the agency is deemed to have warranted such facts despite a general provision requiring an on site inspection by the contractor.

We recognize that the State of Hawaii should be held liable for breach of warranty when its agency represents as a fact what in fact does not exist and the claimant acts in reliance on the representation and is damaged thereby.

The next question is whether the information that the excavated material would have a shrinkage factor of 23 percent was a positive and material representation upon which the plaintiff had a right to rely.

Here the State by a provision of the contract, Section 2.4[2] of the Standard Specifications, explicitly informed the plaintiff and other bidders that "the swell of excavated material and the direction and quantities of overhaul . . . are for the purpose of design only," that it "assumes no responsibility whatever in the interpretation or exactness of any of the information . . . and does not, either expressly or impliedly, make any guarantee of the same," and that it "reserves the right to change the direction and quantities of overhaul and the swell or shrinkage factors shown on the mass diagram and no additional compensation will be allowed by reason of such changes . . . ."

By the foregoing provision the State was stating its opinion as to probable subsurface material to be excavated based on the boring test. There was no representation that the excavated material would have a shrinkage factor of 23 percent; on the other hand the State explicitly stated that it was not warranting or guaranteeing the correctness of the information—the shrinkage factor.

Also, on the subject of log of boring test, we note that

---

[2] Section 2.4 of the State's Standard Specifications for Road and Bridge Construction (1957) reads as follows:

"2.4 *Mass Diagram*—If a mass diagram has been prepared for a project, it will be available to the bidders upon the following conditions.

The swell or shrinkage of excavated material and the direction and quantities of overhaul as shown on said mass diagram are for the purpose of design only, and in like manner as specified in Article 2.3 above, concerning furnishing information resulting from subsurface investigations, the Department assumes no responsibility whatever in the interpretation or exactness of any of the information shown on said mass diagram and does not, either expressly or impliedly, make any guarantee of the same and the Department reserves the right to change the direction and quantities of overhaul and the swell or shrinkage factors shown on the mass diagram and no additional compensation will be allowed by reason of such changes, except as otherwise provided in Article 4.3 of these specifications."

the plaintiff as a bidder, by a provision in § 2.3[3] of the Standard Specifications was required to "examine carefully the site of the work contemplated . . . ." The contract also provided that "[i]t will be assumed that the bidder has investigated and is satisfied as to the conditions to be encountered . . ." that "[w]here investigation of subsurface conditions has been made . . . bidders may inspect the records . . . as to such investigations, including examination of samples. . . ."

The State also informed the plaintiff that the log of test borings "represents only the opinion . . . as to the character of material encountered by it in its test borings

---

[3] Section 2.3 of the State's Standard Specifications for Road and Bridge Construction (1957) reads as follows:

"2.3. *Examination of Plans, Specifications, Special Provisions and Site of Work*—The bidder shall examine carefully the site of the work contemplated and the proposal, plans, specifications, and contract forms therefor. It will be assumed that the bidder has investigated and is satisfied as to the conditions to be encountered as to the character, quality, and quantities of work to be performed and material to be furnished and as to the requirements of these specifications, the special provisions, and the contract.

Where investigation of subsurface conditions has been made by the Department in respect to foundation or other design, bidders may inspect the records of the Department as to such investigation, including examination of samples, if any. When the contract plans include a log of test borings showing a record of the data obtained by the Department's investigation of subsurface conditions, said log represents only the opinion of the Department as to the character of material encountered by it in its test borings and is only included for the convenience of bidders.

Investigations of subsurface conditions are made for the purpose of design, and the Department assumes no responsibility whatever in respect to the sufficiency or accuracy of borings or of the log of test borings or other preliminary investigations, or of the interpretation thereof, and there is no warranty, either expressed or implied, that the conditions indicated are representative of those existing throughout the work or any part of it, or that unforeseen developments may not occur.

No information derived from such inspection of records of preliminary investigations made by the Department or from the Engineer or from his assistants or from the maps, plans, specifications, profits, or drawings will in any way relieve the Contractor from any risk or from properly fulfilling all the terms of the contract.

Records of such preliminary investigations as may have been made by the Department may be inspected at the office of the Territory Highway Engineer, Honolulu, T.H."

and is only included for the convenience of bidders"; that "investigations of subsurface conditions are made for the purpose of design"; and it "assumes no responsibility whatever in respect to the sufficiency or accuracy of borings or of the log of test borings or other preliminary investigations, or of the interpretation thereof, and there is no warranty, either expressed or implied, that the conditions indicated are representative of those existing throughout the work or any part of it, or that unforeseen developments may not occur."

It also warned plaintiff and other bidders that "no information derived from inspection of records of preliminary investigation . . . or from the maps, plans, specifications, profits, or drawings will in any way relieve the Contractor from any risk or from properly fulfilling all the terms of the contract."

Further, the plaintiff admitted that it had knowledge that the terrain of Oahu was primarily lava rock; that the character of the subsurface condition could change drastically within a distance of a few feet; that a boring gives information only as to the exact site of drilling and it may not be representative of the subsurface condition of the project; and that upon examining the site of the project, it had seen outcroppings of rock in the vicinity where it later encountered hard, rocky subsurface in its excavation.

By the provisions of the contract, the plaintiff was required and expected to examine the site of the job and to investigate for itself as to the subsurface conditions to be encountered in the performance of the contract. Also, it was required to estimate correctly the difficulties involved in the performance of the work. The investigation made by the plaintiff may not have been adequate; however, it assumed all the risks and hazards of the project when it submitted its bid.

Under the record of the case, we agree with the finding of the trial court that the plaintiff knew or should have been "aware of the risk and consequences of running into rock material."

The State should not be placed in a position of encouraging careless bids by contractors who might anticipate that should conditions differ from optimistic expectations reflected in the bids, the State would bear the costs of the bidder's error.

Thus, we hold that "[w]hen there is no misrepresentation of factual matters within the state's knowledge or withholding of material information, and when both parties have equal access to information as to the nature of the tests which resulted in the state's findings, the contractor may not claim in the face of a pertinent disclaimer that the presentation of the information, or a reasonable summary thereof, amounts to a warranty of the conditions that will actually be found." *Wunderlich* v. *State*, 56 Cal. Rptr. 473, 423 P.2d 545, 550 (1967). *See also MacArthur Bros. Co.* v. *United States*, 258 U.S. 6 (1922); *Lord* v. *Territory*, 27 Haw. 792 (1924).

Further, the gist of the appeal is that the trial court erred in its finding that the State had not misrepresented fact and that it had not failed to disclose material information which it had in its possession; however, the plaintiff has failed to prove that the findings of fact of the trial court are clearly erroneous, because under the record of this case we are not left "with a definite and firm conviction that a mistake has been committed by the trial court." *Peine* v. *Murphy*, 46 Haw, 233, 238, 377 P.2d 708 (1962). *See also Klein* v. *Hotel Kaimana, Inc.*, 51 Haw. 269, 270, 457 P.2d 210 (1969); *Lennen & Newell, Inc.* v. *Clark Enterprises*, 51 Haw. 233, 456 P.2d 231 (1969); *Low* v. *Honolulu Rapid Transit*, 50 Haw. 582, 445 P.2d 372 (1968).

Affirmed.

**540**

*Richard P. Schulze, Jr.* (*Yoshio Shigezawa* with him on the briefs, *Moore, Torkildson & Schulze* of counsel), for plaintiff-appellant.

*Johnson H. Wong,* Deputy Attorney General (*Bertram T. Kanbara,* Attorney General), for defendant- and third-party plaintiff-appellee.

*Daniel H. Case* (*Gary L. Wixom* with him on the brief, *Pratt, Moore, Bortz & Case* of counsel) for third-party defendants-appellees.