EASTERN TUNNELING CORPORA-
TION, a Maryland Corporation,
Plaintiff,

v.

SOUTHGATE SANITATION DISTRICT,
ARAPAHOE COUNTY, COLORADO,
Defendant.

Civ. A. No. 77–K–997.

United States District Court,
D. Colorado.

Memorandum Opinion And Order
June 25, 1979.

On Second Motion For Summary
Judgment March 27, 1980.

Earle D. Bellamy, II, Bradley, Campbell & Carney, Golden, Colo., for plaintiff.

Stephen G. Everall, Banta, Hoyt, Malone & Banta, Englewood, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is a diversity action brought by plaintiff contractor, Eastern Tunneling Corporation ("ETC"), against Southgate Sanitation District, a public corporation organized under the laws of the State of Colorado, for additional amounts of work performed under a contract for the construction of the Orchard Tunnel, a sanitary sewage tunnel. The case is currently before the court on defendant's motion for summary judgment.

The district awarded the construction contract in question to plaintiff after plaintiff submitted the lowest bid for the work at $1,919,520. In order for plaintiff to construct the tunnel in question it was necessary for it to undertake a certain amount of excavation of dirt and rock. Prior to bidding, the defendant district engaged a private firm to undertake subsurface investigations which were done by taking borings at selected locations. Upon undertaking the excavation, plaintiff allegedly discovered that the level of rock was substantially higher than had been represented by the borings, and was therefore required to expend an additional $593,371 in order to complete the excavation. Plaintiff also claims that it expended $45,000 in extra costs in seeking "equitable adjustment," and $500,000 in lost business opportunities.

The defendant contends that it is not liable for any additional expenses incurred by the plaintiff since the contract specified that the subsurface information provided was not intended as a representation or warranty and that defendant was not liable for any inaccuracy contained in that information.

The defendant also argues that the contract clearly places the burden of risk for differing soil conditions upon the plaintiff and that the plaintiff should therefore be made to absorb the costs for miscalculations.

Plaintiff relies on the doctrine of "equitable adjustment" for its claims. It argues

that delays in construction because of changed subsurface conditions gave rise to its claims in this action. Plaintiff does not characterize its claims for extra work under the contract, but for additional amounts of work necessary to complete the project where the additional work resulted from subsurface conditions that differed from those reasonably anticipated based on all the materials prepared and submitted to prospective bidders by defendant.

In its motion for summary judgment, defendant urges that as a matter of law and contract interpretation, plaintiff cannot recover under the theory of "equitable adjustment" and that plaintiff cannot recover damages for loss of business for breach of contract under Colorado law. Both parties agree that Colorado law governs the construction of this contract.

## I  EQUITABLE ADJUSTMENT

In support of its theory of equitable adjustment, plaintiff cites federal Court of Claims cases dealing with government contracts which as a matter of course contain a "changed conditions" clause. This type of clause is sometimes called a "differing site conditions" clause. Such clauses provide for "equitable adjustment" when the site conditions substantially differ from those anticipated by the contracting parties.[1] Plaintiff admits that the contract at bar does not contain such a clause.

Despite the absence of such a clause in the Orchard Tunnel Project, plaintiff claims that contract provision GP 8–7 is equitable adjustment. GP 8–7 provides:

*DETERMINATION AND EXTENSION OF CONTRACT TIME FOR COMPLETION.* The Contractor shall perform fully, entirely, and in a satisfactory and acceptable manner the work contracted, within the number of days stipulated in the Proposal and Contract. Time will be assessed against the Contractor beginning with the actual date the work is started when this is in accordance with the Notice to Proceed. If the Contractor does not begin the work within the limit as designated in the Notice to Proceed, the calendar days shall start on the first calendar day after the expiration of the ten (10) day limit as stated in the Notice to Proceed. *In adjusting the contract time for the completion of the project, all strikes, lockouts, unusual delays in transportation, or any condition over which the Contractor has no control, and also any suspensions ordered by the Engineer for causes not the fault of the Contractor, shall be excluded from the computation of the contract time for completion of the work.* If the satisfactory execution and completion of the contract shall require work or material in greater amounts or quantities than those set forth in the contract, then the contract time shall automatically be increased in the same proportion as the cost of the additional work bears to the original work contracted for. No allowances will be made for delays or suspensions of the prosecution of the work due to the fault of the Contractor. *In order to secure an extension of time for delays beyond his control, the Contractor shall within ten (10) days from the beginning of any such delay notify the Owner in writing of the cause of the delay and extend the time for completing the work when, in his judgment, the findings of fact justify such an extension, and his finding of fact thereon shall be final and conclusive.* (Emphasis added.)

■ Since the construction of an unambiguous contract presents a question of law, the court must first determine whether GP 8–7 constitutes a "changed conditions"

---

1. The standard government changed condition clause provides: "(1) subsurface of latent physical conditions at the site differing materially from those indicated in the contract, or (2) unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in this contract. The Contracting Officer shall promptly investigate the conditions, and if he finds that such conditions do so materially differ and cause an increase or decrease in the cost of, or in the time required for, performance of this contract, an equitable adjustment shall be made and the contract modified in writing accordingly. * * * " *Foster Construction C.A. v. United States*, 435 F.2d 873, 193 Ct.Cl. 587 (1970).

clause enabling plaintiff to recover for equitable adjustment. *See Grant Inv. Co. v. Fuller*, 171 Colo. 86, 464 P.2d 859 (1970); *Western Colo. Power Co. v. Gibson Lumber & Coal Co.*, 65 Colo. 288, 176 P. 318 (1918). GP 8–7 differs substantially from the standard changed conditions clause set forth in footnote one. First, GP 8–7 makes no reference to changed soil conditions. Second, it does not provide for an equitable adjustment in payment in the event that differing soil conditions are encountered. GP 8–7 clearly and unambiguously provides for extension of time for completion if the contractor encounters any condition over which he has no control. The sole remedy in this event is for the contractor to secure a written extension of time. The clause further provides that the findings of the project owner, defendant, are conclusive and final. Although plaintiff attempted to secure extensions of time under this clause, defendant determined that these extensions were unwarranted. It is settled under Colorado law

> that where parties to a contract designate one who is authorized to determine questions relating to the execution of the contract, and stipulate that his determination shall be final and conclusive, both parties are conclusively bound by his determination of such matter, except in case of fraud or gross mistake, implying bad faith or failure to exercise an honest judgment * * * *Town of Sterling v. Hurd*, 44 Colo. 436, 446, 98 P. 174, 177 (1908).

Since plaintiff does not allege that defendant's denial of an extension under this provision was made in bad faith, it is clear that the remedy for extension is the sole remedy under GP 8–7. In addition, it is equally clear that GP 8–7 does not constitute a changed conditions clause for varying subsoil condition. Thus, the authority cited by plaintiff wherein courts relied on changed conditions clauses are inapplicable.

## II VARYING SOIL CONDITIONS AND REPRESENTATIONS IN THE CONTRACT DOCUMENTS

Plaintiff also argues that it had a right reasonably to rely on the test soil borings conducted at defendant's direction. Defendant contends that contractual disclaimers contained in the soil test boring results are binding and that plaintiff's reliance is foreclosed as a matter of law.

Defendant is correct in its claim that the mere showing of subsoil conditions unexpected by either party does not automatically release the contractor from his obligations under the contract. In Colorado it is well settled that

> It is conceded that, under the common-law rule, a contractor who undertakes an entire contract for erecting a building is presumed, in absence of an express provision to the contrary, to have assumed the risk of unforseen contingencies arising during the course of the work, unless performance is rendered impossible by the act of God, the law or the other party * * * Under this rule there is no implied warranty of the sufficiency of the soil to support the building to be erected, and the contractor assumes the risk of loss incident to such defectiveness. *Newcomb v. Shaeffler*, 131 Colo. 56, 279 P.2d 409, 411, quoting from *Cramp & Co. v. Central Realty Corp.*, 268 Pa. 14, 110 A. 763, 765.

In summary, if the contract places the risk of uncertainty on one of the parties, then that party must absorb losses resulting from the unexpected condition. *Flippin Materials Co. v. United States*, 312 F.2d 408, 160 Ct.Cl. 357 (1963).

Defendant relies on the following provisions in the contract which disclaimed any liability for inaccuracies contained in the test borings submitted to prospective bidders:

> 2–4 EXAMINATION OF PLANS, SPECIFICATIONS, SPECIAL PROVISIONS, AND SITE OF WORK. * * * Any information shown on the Plans as to the soil or material borings or tests of existing materials is for the convenience of the Contractor. The information is not guaranteed, and no claims for extra work

or damages will be considered if it is found during construction that the actual soil or materials conditions vary from those indicated by the boring.

9–3 SCOPE OF PAYMENT. The contractor shall accept the compensation, as herein provided, in full payment for furnishing all materials, equipment, labor, tools, and incidentals necessary to complete the work and for performing all work contemplated and embraced under the Contract; also for loss or damage arising from the nature of the work, or from the action of the elements, *or from any unforeseen difficulties which may be encountered during the prosecution of the work until the final acceptance by the Engineer, and for all risks of every description connected with the prosecution of the work*, for all expenses incurred in consequence * * *. (Emphasis added.)

01011–12 SOILS INVESTIGATION. A special soils investigation has been made by Woodward-Clevenger and Associates, Denver, Colorado. A copy of the report describing the investigation and its results is attached as Appendix A to these Contract Documents and Construction Specifications. *The soils report is included for information only and conditions existing at the time of the tests. Additional soil tests and data shall be at the Contractor's option at no cost to the Owner.* (Emphasis added.)

Page 9 of the soils report states: The exploratory data presented in this report were collected to help develop design and cost estimates for the proposed tunnel, and thus have limited value for indicating underground conditions for contractor bidding or construction. If it is necessary to portray underground conditions well enough to enable contractors to more accurately evaluate the conditions for bidding and execution of work, we would recommend considering exploratory work designed specifically for that purpose after the affected designs are essentially finalized.

From these contractual provisions, it is clear that the contract explicitly places the risk of uncertainty in regard to differing soil conditions on the plaintiff. In addition, plaintiff has submitted evidence that it had one of its own experts examine the plans and entire soils report prior to bidding. Therefore, plaintiff cannot complain now that it relied on incomplete test borings. On the basis of the disclaimers, plaintiff could have protected itself from unforeseen soil conditions by bidding a higher unit price for rock excavation. As stated in *Ace Flying Service, Inc. v. Colorado Dept. of Agriculture*, 141 Colo. 467, 348 P.2d 962, 965 (1960):

> Hence it is the general rule that if a party enters into a contract or any other legal transaction with sufficient mental capacity to understand it, and not under the influence of fraud, coercion, or imposition, the courts will not relieve him of the consequences of his act on the sole ground that the bargain is, as to him, improvident, rash, foolish or oppressive.

The fact that plaintiff did not bid a higher unit price for rock excavation when the burden of unforeseen differing soil conditions was upon it, precludes plaintiff from attempting to escape the valid disclaimers relating to the accuracy of the soils report. Therefore, the court finds that the representations made in defendant's soils report did not constitute an implied warranty as to their accuracy.

### III MISREPRESENTATIONS

Although I have found that GP 8–7 does not constitute a changed conditions clause entitling plaintiff to relief for equitable adjustment and that the contract documents did not contain implied warranties relating to the accuracy of the soils reports, the question of whether defendant is liable to plaintiff because it materially misrepresented facts about the subsoil conditions remains.

The Supreme Court held long ago, in a series of cases relating to government contracts, that the government is liable to a contractor when it makes positive state-

ments of material facts concerning the nature of work in question, when those facts are false. *Hollerbach v. United States*, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898 (1915); *Christie v. United States*, 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933 (1915); *United States v. Spearin*, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918); *see also E. H. Morrill Co. v. State of California*, 65 Cal.2d 787, 56 Cal.Rptr. 479, 423 P.2d 551 (1967). Moreover, general exculpatory clauses which disclaim any responsibility for the accuracy of that data have been held to be of no effect when the positive specifications made by the government were obviously intended to be used by bidding contractors in formulating their bids. *Hollerbach, supra*, 233 U.S. at 172, 34 S.Ct. at 555.

■■■ Of course, the government does not become an insurer merely by providing certain information. State courts in applying these principals have imposed two conditions on a claim for recovery for misrepresentation. The first requirement is that the bidder is not reasonably able to discover the true facts for himself. In *Christie, supra*, the Supreme Court found not only that the borings performed by the government were misleading, but also that the contractors did not have sufficient time to take borings themselves.

■■■ The second condition placed on a claim for recovery for misrepresentation is the materiality of the misrepresentations themselves. Recovery cannot be had for a contractor's own misjudgment based on information which itself is accurate. Thus, where the government undertakes a series of borings which are accurate, but which seem to indicate that there is less rock in the subsoil than actually exists, the contractor cannot recover for the cost of removing the extra rock. *McNulty, Inc. v. Village of Newport*, 290 Minn. 117, 187 N.W.2d 616 (1971).

■■■ Where the contractor has the actual and accurate facts before him when he makes his bid, he assumes the risk of any deviation in conditions from those indicated in the samples. Only when the government does not provide correct factual representations are exculpatory clauses not given their full force and effect:

> [T]he state is not liable for conclusions drawn by a bidder when the state has done little more than represent the results of its investigations and the bidder knew or should have known of the factual bases for the representations. *E. H. Morrill, supra*, 56 Cal.Rptr. at 481, 423 P.2d at 553.

■■■ Since plaintiff has a potential claim for misrepresentation, summary judgment cannot be granted on that claim. In order to prevail on such a claim, plaintiff must prove (1) whether it could have discovered the correct facts concerning the subsoil conditions through reasonable investigation prior to the contract, and (2) whether the data actually provided by defendant was inaccurate. As to the second condition, it will not be sufficient for plaintiff to show that it was misled by the general conclusions made by the district's agents as to the nature of the soil. The plaintiff must show that the underlying factual data was inaccurate.

## IV DAMAGES FOR LOSS OF BUSINESS OPPORTUNITIES

As stated earlier, plaintiff seeks damages for loss of business opportunities resulting from the alleged differing soil conditions. Defendant seeks summary judgment denying such a claim. In doing so, defendant relies on *Comfort Homes, Inc. v. Peterson*, 37 Colo.App. 516, 549 P.2d 1087 (1976), where the court stated:

> The amount of these damages has been described as the profits which would have been realized on the whole contract, or as the contract price less (1) any payments made by the owners on the contract, and (2) what it would have cost the builder if it had completed the house in accordance with the contract. 549 P.2d at 1089–90. (Citations omitted.)

For the purpose of this motion regarding damages, it is important to note that *Comfort Homes* was an action in which a builder sued for breach of contract prior to the

completion of construction. Therefore, the court was correct in noting that damages would be limited to the profits which would have been realized on that contract absent a breach. The case at bar is different, here plaintiff seeks damages for loss of business opportunities incurred by the additional time it was required to work on the Orchard Tunnel due to alleged differing soil conditions.

■ Special damages for lost profits have been allowed in Colorado if at the time the contract was entered into, such loss was reasonably within the contemplation of the parties. *Boyle v. Bay*, 81 Colo. 125, 254 P. 156 (1927). Accordingly, it is clear that the allowance of such damages is possible, subject to competent proof at trial. Therefore, summary judgment on this question is inappropriate. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is granted in part as to plaintiff's claims for equitable adjustment and breach of implied warranty regarding the accuracy of the test borings.

IT IS FURTHER ORDERED that summary judgment is denied as to plaintiff's claims for misrepresentation and for damages for loss of business opportunity.

### ORDER

#### On Second Motion For Summary Judgment

The above-entitled action is here on defendant's Second Motion for Summary Judgment. The background of the action is set forth in this court's memorandum opinion and order dated June 25, 1979. In that order, defendant's first motion for summary judgment was granted as to plaintiff's claims for equitable adjustment and for breach of an alleged implied warranty regarding the accuracy of test borings. The motion was denied as to plaintiff's claims for misrepresentation and alleged damages for loss of business opportunity. Defendant has moved again for summary judgment as to plaintiff's claims that defendant misrepresented the subsurface conditions at the site of the Orchard Tunnel. Plaintiff claims that a subsurface conditions report related to the construction of a tunnel and provided by defendant misrepresented the extent of weathering in the rock, the degree of hardness of the rock and the amount of water that it would encounter in the excavation.

■ While summary judgment was not deemed appropriate at the time of the previous motion discussed above, I did discuss the applicable law, which is now the law of the case. *See* Memorandum Opinion and Order of June 25, 1979, at 114–115. As I said there, "[r]ecovery cannot be had for a contractor's own misjudgment based on information which itself is accurate. Thus, where the government undertakes a series of borings which are accurate, but which seem to indicate that there is less rock [or other adverse circumstance] in the subsoil than actually exists, the contractor cannot recover for the cost of removing the extra rock." *Id.* at 115. I might add that such a situation is generally the sort of problem that a "changed conditions" clause is intended to remedy, but as I have held, there is no such applicable clause here. Accordingly, plaintiff can recover on its claim of misrepresentation only if it can prove

(1) whether it could have discovered the correct facts concerning the subsoil conditions through reasonable investigation prior to the contract, and (2) whether the data actually provided by defendant was inaccurate. As to the second condition, it will not be sufficient for plaintiff to show that it was misled by the general conclusions made by the district's agents as to the nature of the soil. The plaintiffs must show that the underlying factual data was inaccurate.

*Id.* at 115.

I have reconsidered what I believe to be the leading cases in this area, and have found that the above requirements are the applicable rules of law. *See MacArthur Brothers Co. v. United States*, 258 U.S. 6, 42 S.Ct. 225, 66 L.Ed. 433 (1922); *United States v. Atlantic Dredging Co.*, 253 U.S. 1, 40 S.Ct. 423, 64 L.Ed. 735 (1920); *United States v. Spearin*, 248 U.S. 132, 39 S.Ct. 59,

63 L.Ed. 166 (1918); *Christie v. United States*, 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933 (1915); *Hollerbach v. United States*, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898 (1914); *McKee v. City of Atlanta*, 414 F.Supp. 957 (N.D.Ga.1976); *Joseph F. Trionfo & Sons, Inc. v. Board of Education*, 41 Md.App. 103, 395 A.2d 1207 (1979); *McNulty v. Village of Newport*, 290 Minn. 117, 187 N.W.2d 616 (1971); *Dravo Corporation v. Municipality of Metropolitan Seattle*, 79 Wash.2d 214, 484 P.2d 399 (1971); *J. A. Thompson & Son, Inc. v. State of Hawaii*, 51 Hawaii 529, 465 P.2d 148 (1970); *Wunderlich v. State of California*, 65 Cal.2d 777, 56 Cal.Rptr. 473, 423 P.2d 545 (1967); and *E. H. Morrill Co. v. State of California*, 65 Cal.2d 787, 56 Cal. Rptr. 479, 423 P.2d 551 (1967).[1] While there is an element of justifiable reliance in these cases, there can be no recovery for additional, unanticipated work unless a contractor meets the requirements above.

▪ The rules allowing for summary judgment are not intended to substitute trial by affidavit for the give and take of trial in open court. As the Tenth Circuit has said, in *National Aviation Underwriters v. Altus Flying*, 555 F.2d 778, 784 (10th Cir. 1977):

> The court must view the summary judgment papers in the light most favorable to the party opposing the motion. [Citation omitted.] We must consider factual inferences tending to show triable issues in the light most favorable to the existence of such issues and summary judgment must be denied unless the movant demonstrates his entitlement to it beyond a reasonable doubt. [Citation omitted.]

Still, the court of appeals has also said, in *Bruce v. Martin-Marietta Corp.*, 544 F.2d 442, 445 (10th Cir. 1976), that "[c]onclusory allegations do not establish an issue of fact under Rule 56. [Citation omitted.] '[T]he trial court may pierce the pleadings by determining from the depositional proof, ad-

missions and affidavits in the record whether any material issues of fact exist.' *Ando v. Great Western Sugar Co.*, 10 Cir., 475 F.2d 531, 535 (footnote omitted)." The summary judgment rule itself, at F.R.Civ.P. Rule 56(e), states expressly:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*See Wilt v. GTE International*, 82 F.R.D. 686, 687 (D.Colo.1979).

▪ There is no dispute that the conditions actually encountered in the excavation of the Orchard Tunnel were different than those that had been expected. That alone does not state a claim of misrepresentation. I have reviewed in full the memoranda in support of and opposition to the motion for summary judgment, as well as all the supporting documents. Except for claims concerning rock hardness, plaintiff's memorandum in opposition does not indicate any evidence that would support an argument that the underlying test data was either inaccurate or "misrepresented" in the sense of some failure to disclose known facts or to conceal such facts. In answers to interrogatories, plaintiff says that it does not claim that the report was "negligently prepared," and that it "makes no claim that the data was erroneous or the report incomplete;" plaintiff says instead that the opinions or conclusions expressed in the report were inaccurate. (*See* Plaintiff's Answers to Defendant's First Set of Interrogatories, Interrogatories No. 13, 15, 17, 19 and 21.)[2] At least two of plaintiff's own experts indicate that the report was a good one and that the extrapolations were reasonable. (*See* Deposition of Clark E. McHuron, at 34,

---

1. Most, if not all, of the other cases cited by the parties deal with changed conditions clauses, which are not applicable to the issue here.

2. I do not mean to imply that negligence is a necessary element of a claim for misrepresentation.

44–50, 67, 106 and 133; Deposition of Dr. John F. Abel, Jr., at Vol. I, 118–29; Vol. II, 15, 21; Vol. III, 12.) There is no indication that the test data regarding the extent of weathered rock or the amount of water was inaccurate.

The claims about rock hardness do raise questions of fact. Specific support for such questions includes, but is not necessarily limited to, the additional tests performed by F. M. Fox & Associates and Dr. John F. Abel, Jr., and the deposition testimony of Dr. Abel, at Vol. III, 66, and of Clark E. McHuron, at 68–72, 134–140. A determination of these questions would require findings of fact, which is not appropriate on a motion for summary judgment. Accordingly it is

ORDERED that defendant's Second Motion for Summary Judgment be and hereby is granted as to plaintiff's claims of misrepresentation concerning the extent of weathering in the rock encountered and the amount of water to be expected, and that said motion be and hereby is denied as to plaintiff's claims of misrepresentation concerning the hardness of the rock encountered.